## SAMUEL THOMPSON *versus* THOMAS GOULD.

The plaintiff made a parol agreement for the purchase of a parcel of land, with a dwellinghouse thereon, of the defendant, and paid the purchase money, taking a written receipt that it was paid for the estate, the defendant undertaking to procure a discharge of a mortgage on the estate, and which he accordingly did, but before a deed was given or tendered to the plaintiff the house was destroyed by fire.    It was *held*, that the payment did not take the contract out of the statute of frauds, and that the plaintiff was entitled to recover back the money, on the ground of a failure of the consideration.

*Held* also, that in such case, general indebitatus assumpsit was a proper form of action.

INDEBITATUS assumpsit to recover back from the defendant, the sums of money mentioned in the receipts hereafter set forth.    The parties stated a case.

On April 11, 1835, the defendant purchased of Edward Page a parcel of land, with a dwellinghouse thereon, in Salem street, in Boston.    The estate was subject to a mortgage to the Massachusetts Hospital Life Insurance Company, for 1800 dollars, and as collateral security Page had procured a policy of insurance on the house for one year from October 1, 1834, payable to the mortgagees.    The policy was not assigned by

Page to the defendant.   On May 18, 1835, at about 4 o'clock    Thompson
in the afternoon, the house was totally destroyed by fire.              v.
                                                                       Gould.

About the 8th of May 1835, the defendant offered to sell
the estate to the plaintiff for 3700 dollars, and the plaintiff
agreed to take it at that price.   The defendant undertook to
procure a discharge of the mortgage, it being a part of the
agreement that the plaintiff should have the estate free from
incumbrance.   The plaintiff requested the defendant to make
certain repairs on the house, and agreed to pay for them.
These agreements were parol.   Between the 8th of May and
the time of the fire on the 18th, the plaintiff carried into the
house articles of furniture, and all the things which he intend-
ed to place in the house.   During the same period he was
frequently at the house superintending and directing the re-
pairs.   On the 14th of May the plaintiff paid the defendant
2000 dollars, and took a receipt as follows : " Boston, May
14, 1835.   Received of Samuel Thompson sixteen hundred
dollars in part pay for estate sold him by me, in Salem street.
Do. four hundred.   Thomas Gould."   On the 16th of May
the defendant told the plaintiff that he could not get the mort-
gage discharged, and asked the plaintiff what he should do.
The plaintiff replied, that he would pay him the rest of the
money, if he wished it, but he must get the mortgage dis-
harged the best way he could.   On the same day the plaintiff
paid the defendant 1848 dollars and took a receipt as follows :
" Boston, May 16, 1835.   Received of Samuel Thompson
eighteen hundred and forty-eight dollars.   Thomas Gould."
The payments by the plaintiff exceeded the price of the es-
tate and the cost of repairs by the sum of $82·33.   Between
10 and 12 o'clock on the 18th of May the defendant paid the
mortgage and received the mortgage deed and policy of in-
surance, with an indorsement on the policy as follows : " May
18, 1825.   Value received, the M. H. Life Ins. Co. hereby
release all their claim on this policy.   N. Bowditch, Actu-
ary ;" and before 2 o'clock of the same day the actuary dis-
charged the mortgage on the record.   The policy was not
assignable except with the assent of the assurers, and no ap-
plication for their assent was made.

While the house was on fire, one Low, a witness, asked the

Thompson
*v.*
Gould.

plaintiff if he had not better have taken the witness's advice to get the house insured. The defendant replied, that he did not know whether he had or not. The witness said, your house is on fire. The defendant said, he did not know that it was his house. On being asked if he had not told the witness that he had bought and paid for the house, and that his men were at work on it, he replied that he had never had the papers. On the same afternoon the plaintiff told one Jones, that he had moved the last load of his goods into the house about half an hour before it took fire, and that he had just purchased it of the defendant and paid for it. Jones asked him if he had any insurance on the house. The plaintiff replied that he did not know whether there was any or not, and added, that his loss must be at least 4000 dollars.

A day or two after the fire the plaintiff threw into the cellar some bricks which had fallen upon the side walk from the walls of the house, and he requested the defendant to take care of some iron and copper among the ruins, and they were carried into the defendant's yard.

On the first or second day after the fire the defendant offered the plaintiff a deed of the estate, and the policy above mentioned. The plaintiff declined receiving them, and said he must know more about it before he did any thing.

If in the opinion of the Court the plaintiff was entitled to recover the whole or any part of his demands, the defendant was to be defaulted ; if not, the plaintiff was to be nonsuited.

March 7th,
1837

*Sprague* and *Peabody*, for the plaintiff, cited to the point, that the contract between the parties was ineffectual, by reason of the statute of frauds, *Boydell* v. *Drummond*, 11 East, 142 ; *Dwight* v. *Pomeroy*, 17 Mass. R. 303 ; *First Parish in Freeport* v. *Bartol*, 3 Greenl. 340 ; *Kidder* v. *Hunt*, 1 Pick. 328 ; Sugden on Vend. (9th edit.) 90, 91 ; *Colson* v. *Thompson*, 2 Wheat. 336 ; and that in the case of a bargain for the sale of a chattel an accidental loss must be borne by the person who is the owner at the time of the loss, *Rugg* v. *Minett*, 11 East, 210 ; *Hinde* v. *Whitehouse*, 7 East. 558 ; *Zagury* v *Furnell*, 2 Campb. 240 ; *Tarling* v. *Baxter*, 9 Dowl. & Ryl. 272 ; 1 Story on Equity, 157 ; 2 Kent's Comm. (2d edit.) 468 ; Long on Sales, 152 to 162 ; *Ex parte Minor,* 11 Ves. 559

*S. D. Parker*, for the defendant, contended that indebitatus assumpsit would not lie, there being an express contract of sale, the consideration of which had failed but in part, and which had not been rescinded, and which could not be rescinded by the plaintiff, inasmuch as the defendant had been in no fault and could not be placed in as good a situation as he was in before the contract was made ; *Cutter* v *Powell*, 6 T. R. 320 ; *Stoddart* v. *Smith*, 5 Binney, 355 ; Cornish on Purchase Deeds, 144 ; *Weston* v. *Downes*, 1 Dougl. 23 ; *Towers* v. *Barrett*, 1 T. R. 133 ; *Gillet* v. *Maynard*, 5 Johns. R. 85 ; *Hunt* v. *Silk*, 5 East, 449 ; *Conner* v. *Henderson*, 15 Mass. R. 319 ; *Norton* v. *Young*, 3 Greenl. 30 ; *Caswell* v. *Black River Manuf. Co.* 14 Johns. R. 455 ; *M'Neven* v. *Livingston*, 17 Johns. R. 437 ; and that the case was taken out of the statute of frauds by the payment of the money and taking possession, which were a part performance, and by the receipts in writing ; *Ketchum* v. *Evertson*, 13 Johns. R. 359 ; *Ellis* v. *Hoskins*, 14 Johns. R. 363 ; *Caswell* v. *Black River Manuf. Co.* 14 Johns. R. 453 ; *Dowdle* v. *Camp*, 12 Johns. R. 451 ; *Green* v. *Green*, 9 Cowen, 46 ; *Hudson* v. *Swift*, 20 Johns. R. 24 ; *Greenby* v. *Cheevers*, 9 Johns. R. 126 ; *Judson* v. *Wass*, 11 Johns. R. 525 ; *Knight* v. *Crockford*, 1 Esp. Rep. 191.

WILDE J. delivered the opinion of the Court. This is an action of assumpsit, in which the plaintiff claims a certain sum of money paid by him to the defendant on a consideration which has failed. The money was paid on a parol agreement to purchase of the defendant a certain house and estate, which were to be conveyed to the plaintiff free and clear of all incumbrances, the defendant undertaking to discharge a mortgage on the estate, which was subsequently done, but before the estate was conveyed to the plaintiff the house was consumed by fire ; and the material question is, which of the parties shall eventually sustain this loss.

A previous question is interposed, arising from an objection to the form of the action, which, although it does not affect the merits of the case, is nevertheless sufficient, if well founded, to defeat the present action. It is contended by the defendant's counsel, that the money was paid on an executory

Thompson
v.
Gould.

contract still subsisting, and that the plaintiff's remedy, if he has any, is by an action on the contract, or by a bill in equity

It cannot be denied, that if the money demanded were paid on a valid subsisting contract, the plaintiff's remedy for the non-performance by the defendant, would be by an action on the contract, and that a general indebitatus assumpsit to recover the purchase money could not be maintained. But it is very clear that the parol contract in the present case is void by the statute of frauds, and that a part performance of the agreement, by payment of the purchase money, does not take the case out of the statute. In the case of *Davenport* v. *Mason*, 15 Mass. R. 94, it was said that the statute does not wholly vacate the contract, but only inhibits all actions brought to enforce it, and that the doctrine of courts of equity as to the effect of part performance of a parol agreement for the conveyance of real estate, seemed to have been recognised by the courts of law ; and the case of *Crosby* v. *Wadsworth*, 6 East, 602, was referred to as a case turning upon this principle. But the case of *Davenport* v. *Mason* was decided on a different point. And no case can be found, where in an action on the contract it has been decided, that part performance of a parol agreement for the conveyance of land would take a case out of the statute. On the contrary, it was decided in the case of *Kidder* v. *Hunt*, 1 Pick. 328, that no action would lie on such a contract, and that part performance would not take it out of the statute.

It has been argued that this contract may be enforced in equity. But if it might be, that would not affect the plaintiff's legal rights. This Court, however, has no authority to decree a specific performance of a parol contract. Nor could this contract be enforced by a court of equity having jurisdiction of the subject matter, for by the destruction of the house the defendant is no longer able to perform his part of the contract. He may make compensation for the destruction of the house, but generally a purchaser, independently of special circumstances, is not to be compelled to take an indemnity, but he may elect to recover back the purchase money, if paid in advance, and if the vendor refuses or is unable on his part to perform the contract, and the purchaser has no legal remedy

to recover damages.  1 Sugd. Vend. (9th edit.) 304 ; *Hep-*    Thompson
*burn* v. *Auld*, 5 Cranch, 262 ; *Waters* v. *Travis*, 9 Johns.    *v.*
R. 464.                                                            Gould.

The only question, therefore, is, whether the plaintiff or
the defendant is to sustain the loss by fire.   In respect to the
loss of personal property, under the like circumstances, the
principle of law is perfectly clear, and well established by all
the authorities.   When there is an agreement for the sale and
purchase of goods and chattels, and after the agreement, and
before the sale is completed, the property is destroyed by
casualty, the loss must be borne by the vendor, the property
remaining vested in him at the time of its destruction.   *Tar-
ling* v. *Baxter*, 9 Dowl. & Ryl. 276 ; *Hinde* v. *Whitehouse*,
7 East, 558 ; *Rugg* v. *Minett*, 11 East, 210.   No reason
has been given, nor can be given, why the same principle
should not be applied to real estate.   The principle in no
respect depends on the nature and quality of the property,
and there can therefore be no distinction between personal
and real estate.   And so it is laid down by Chancellor *Kent*,
in his Commentaries.   " Thus if A sells his horse to B, and
it turns out that the horse was dead at the time, though the
fact was unknown to the parties, the contract is necessarily
void.   So if A, at New York, sells to B his house and lot
in Albany, and the house should happen to have been de-
stroyed by fire at the time, and the parties equally ignorant of
the fact, the foundation of the contract fails, provided the
house, and not the ground on which it stood, was the essential
inducement to the purchase."   2 Kent's Comm. (2d edit.)
367.

The same principle applies to an agreement to purchase a
house, as in the present case, the house being casually de-
stroyed before the purchase is completed.   Neither party
being in fault, the loss must be borne by the owner of the
property.

A different doctrine has been adopted in equity, founded
on the fiction, that whatever is agreed to be done, shall be
considered as actually done.   So that if there is an agreement
to purchase, it is equivalent to an actual purchase, in contem-
plation of equity ; and the purchaser must bear any loss which

may happen to the estate between the agreement and the conveyance In *Paine* v. *Meller*, 6 Ves. 349, where A had contracted for the purchase of some houses which were burned down before the conveyance, the loss was holden to fall upon him, although the houses were insured at the time of the agreement for sale, and the vendor permitted the insurance to expire without giving notice to the vendee. Upon this decision Sugden remarks, that it proceeded on the only principle upon which it could be supported, that the purchaser was in equity the owner of the estate. Sugd. Vend. (9th edit.) 278. And in *Ex parte Minor*, 11 Ves. 559, where a similar accident happened to an estate sold before a master, and the report had only been confirmed nisi, the loss was holden to fall on the vendor.

Formerly, however, a different doctrine was admitted in courts of equity. In *Stent* v. *Baylis*, 2 P. Wms. 220, the Master of the Rolls said, "If I should buy a house, and before such time as by the articles I am to pay for the same, the house be burnt down by casualty of fire, I shall not in equity be bound to pay for the house, and yet the house may be built up again." So upon a sale of a leasehold for lives, and previously to the conveyance one of the lives dropped, although a specific performance was decreed, the Lord Keeper intimated, that if all the lives had been dropped before the conveyance the decision might be different, for that the money was to be paid for the conveyance, and no estate being left, there could be no conveyance. Thus it appears, that formerly the principle was the same in equity as it ever has been in law. And in one respect the principle still remains the same, namely, that the loss of the property under similar circumstances as those in the present case, must be borne by the owner of the property at the time the loss happened ; and it seems impossible that any different principle can be adopted. As we therefore cannot recognise the fiction in equity, by which a purchase and an agreement to purchase are held to be similar, and indeed identical in respect to the present question, we must hold that the defendant is bound to repay the purchase money, as the consideration upon which it was paid has wholly failed, the plaintiff not being bound, under the

circumstances of the case, to accept a deed of the land. Where the contract is entire, the vendor cannot recover or retain part of the purchase money, where he cannot convey or make a good title to the whole estate sold.

The rule in chancery on this point also, is somewhat different and depends more on the discretion of the court; which has given rise to many conflicting opinions and decisions.

In the case of the Cambridge wharf, upon which Lord *Kenyon,* when sitting in chancery, in the case of *Poole* v. *Shergold,* 1 Cox's Rep. 273, made some remarks, the vendor made title to all the estate but the wharf, and that part of the land was the principal object of the vendee in making the purchase, yet the purchaser, who had contracted for the house and wharf, was compelled to complete the purchase. This decision, as Lord *Kenyon* truly remarked, was contrary to all justice and reason. In other cases a more reasonable doctrine has prevailed, which is, " that if there be a failure of title to part, and that appears to be so essential to the residue, that it cannot reasonably be supposed the purchase would have been made without it, or as in case of the loss of a mine, or of water necessary to a mill, or of a valuable fishery attached to a parcel of poor land, and by the loss of which the residue of the land was of little value, the contract may be dissolved *in toto.*" This rule was adopted in Pennsylvania, in the case of *Stoddart* v. *Smith,* 5 Binney, 355, and a similar rule has been adopted in South Carolina. *Pringle* v. *Executors of Witten,* 1 Bay, 256 ; *Tunno* v. *Fludd,* 1 M'Cord, 121.

" The good sense and equity of the law on this subject is," as Chancellor *Kent* remarks, " that if the defect of title, whether of lands or chattels, be so great as to render the thing sold unfit for the use intended, and not within the inducement to the purchase, the purchaser ought not to be held to the contract, but be left at liberty to rescind it altogether. But if the defects were not so great as to rescind the contract entirely, there might be a just abatement of price " 2 Kent's Comm. (2d edit.) 373.

This rule, if applied to the present case, would not alter

Thompson
*v.*
Gould.

the result. But it is not necessary to consider the case in reference to this rule, however reasonable it may be, as the plaintiff cannot be compelled to perform the contract ; and as no fault can be imputed to him, he is entitled to recover back the purchase money. If the house had not been destroyed, and the plaintiff had refused to perform the contract, the case would have required a different decision.

*Judgment for plaintiff.*