THOMAS F. ANDERSON *vs.* ANNIE M. YAWORSKI.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 5th—decided October 8th, 1935.

*Leon A. Winslow,* for the appellant (defendant).

*James B. Henry,* for the appellee (plaintiff).

MALTBIE, C. J. On November 13th, 1933, the plaintiff and the defendant entered into a written agreement, by the terms of which the defendant agreed to sell and the plaintiff to buy for $2745 a certain parcel of land with the buildings thereon. The agreement acknowledged the receipt of $100 upon the purchase price and provided that the plaintiff would, on or before April 1st, 1934, pay the defendant the balance of the purchase price, in part in cash and the rest by the assumption of a mortgage already upon the premises and by giving to the defendant a second mortgage for the remaining sum due; and it also provided that if the plaintiff failed to make the payments stated he should forfeit all claims to the premises and all money paid. Upon the execution of the contract the defendant paid a commission of $140 to a real-estate agent for his services in negotiating the sale. The plaintiff intended to occupy the premises as his home. On January 26th, 1934, the dwelling-house on the premises was totally destroyed by accidental fire

without the fault of either party. Shortly before April 1st the defendant informed the plaintiff that she would be ready and willing to carry out the contract on March 31st; and she also offered to assign to him all rights under an insurance policy which had been issued to her upon the buildings on the property. This offer the plaintiff refused and, declining to make further payments, he demanded the return of the $100 he had paid. He brought this action to recover that sum, and the defendant filed a counterclaim seeking damages for his failure to perform the contract. The trial court concluded that, as there had been a substantial failure of consideration by the destruction of the dwelling-house, the plaintiff was relieved of his obligation to fulfil the provisions of the agreement and was entitled to recover the amount he had paid. Judgment entered for the plaintiff upon the complaint and counterclaim and the defendant has appealed.

It is undoubtedly true that the majority of courts have adopted the rule that, where a contract is made to convey real estate upon which a building stands, the burden of the loss by the burning of the building without fault of either party falls upon the vendee, no matter how material a part of the substance of the contract it was or whether or not the time for the performance had arrived when it was destroyed. Notes, 22 A. L. R. 575; 41 A. L. R. 1272; 46 A. L. R. 1126. This rule, differing from that applied to contracts for the sale of personal property, is based, as far as legal principles are concerned, upon the nature of the estate of the vendee, which equity regards as arising out of the contract. The legal foundation for the rule does not bear analysis. See Langdell, a Brief Survey of Equity Jurisdiction (2d Ed.) pp. 58 et seq. (1 Harvard Law Review, pp. 373 et seq.) ; 2 Williston, Contracts, §§ 928 et seq. (9 Harvard Law Review,

p. 106). While for many purposes the vendee in equity is recognized as the real owner of the property, it cannot be said with accuracy that the entire beneficial interest has vested in him; for instance, pending the time fixed for the performance of the contract the vendee has not one of the principal incidents of ownership, the right to the enjoyment and profits of the property. 66 C. J. p. 1034, §§ 784 et seq. For this reason, if for no other, the vendor cannot properly be said to be a trustee of the land for the vendee; Brett, L. J., *Rayner* v. *Preston,* L. R. 18 Ch. Div. 1, 10; Pound, The Progress of the Law, 33 Harvard Law Review, p. 830; rather their relationship is like that between a mortgagor in possession and the mortgagee, which is more aptly described as one in the nature of a trust than as one of a trust in fact, although, as in similar situations, equity may for certain purposes undoubtedly treat the vendor as a quasi-trustee. *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 472, 155 Atl. 838.

The maxim that equity regards that as done which ought to be done and its outgrowth, the equitable doctrine of conversion, cannot be broadly applied to such a situation as the one before us. The basis of the maxim is the existence of a duty; "unless the equitable *ought* exist, there is no room for the operation of the maxim;" 3 Pomeroy, Equity Jurisprudence (4th Ed.) § 1160; agreements " 'are to be considered as done at the time when, according to the tenor thereof, they ought to have been performed;' " *Hall* v. *Hall,* 50 Conn. 104, 111; *Manice* v. *Manice,* 43 N. Y. 303, 372; and equity can hardly regard that as presently done which the parties to a contract have agreed shall be done only in the future. The basis of the doctrine of conversion whereby for certain purposes real estate is considered in equity as personal and personal estate

as real, is the intent of the party creating a right in the property, or in the case of a contract, the intent of the parties to it; "this, like all other questions of intention, must ultimately depend upon the provisions of the particular instrument." Pomeroy, Op. Cit., § 1162. "The doctrine of equitable conversion is an equitable one, adopted for the purpose of carrying into effect, in spite of legal obstacles, the intent of a testator or settlor. It is not a fixed rule of law, but proceeds upon equitable principles which take into account the result which its application will accomplish. Its application is, therefore, governed by somewhat different considerations, according to the connection in which it is invoked." *Emery* v. *Cooley,* 83 Conn. 235, 238, 76 Atl. 529. In determining the devolution of estates, equity may regard real property as converted into personal or personal into real even though by the terms of a will the actual conversion is postponed to some future time, and may hold that a contract to sell real estate works a conversion in so far as the rights of those interested in the estate of the vendor are concerned, where he dies before the time of performance has arrived. *Emery* v. *Cooley,* supra; *Bowne* v. *Ide,* 109 Conn. 307, 315, 147 Atl. 4. But in doing this equity is giving that effect to the transaction which will most nearly work out the rights of those interested in the estate in accordance with the aspect of the property which it may fairly be assumed it had taken in the mind of the deceased. But, as between the parties to the contract, to regard the land as converted into personalty before the time for performance of the contract has come is to do violence to their expressed intent. Under such a contract, the vendor's right to money in lieu of the land and the vendee's right to

the land in lieu of the money can arise only when the time agreed upon for performance has arrived.

Nor do the distinctions between the effect of the contract for the sale of real estate and those for the sale of personal property, often adverted to in the opinions, afford sufficient basis for the application of a different rule as to risk of loss. While it is true that in most jurisdictions of this country, by the recording of a contract to sell real estate notice of the rights of the vendee will be imputed to all the world and hence he is protected to a greater extent than is the vendee of personal property, that is only because of the effect of the recording statutes; and a vendee of personal property enjoys a like protection where, as in the case of conditional sales, the statutes provide for the recording of the contract. *Liquid Carbonic Co.* v. *Black,* 102 Conn. 390, 394, 128 Atl. 514; *Tire Shop* v. *Peat,* 115 Conn. 187, 189, 161 Atl. 96. While contracts for the sale of real estate may usually be specifically enforced, but contracts for the sale of personal property can only be so enforced in exceptional circumstances, this distinction is due to the fact that in the case of the latter the disappointed purchaser may ordinarily repair his loss by the purchase of other like property, while each parcel of land has usually its own peculiar characteristics and one parcel cannot often afford a complete and adequate substitute for another in the mind of the purchaser. "Courts of equity decree the specific performance of contracts, not upon any distinction between realty and personalty, but because damages at law may not, in a particular case, afford a complete remedy. Thus a court of equity decrees performance of a contract for land, not because of the real nature of the land, but because damages at law, which must be calculated upon the general money-value of land, may not be a

complete remedy to the purchaser, to whom the land may have a peculiar and special value." *Adderley* v. *Dixon,* 1 Sim. & St. 607, quoted 5 Pomeroy, Op. Cit., p. 4869. Nor are we impressed with the practical reasons sometimes advanced in support of the majority rule, that as the vendee would have the benefit, upon the performance of the contract, of any access of value accruing subsequent to its making, it is only just that he should bear any risk of loss due to the destruction of the building upon the property during this time. Whether the one could fairly be set off against the other involves considerations which cannot be definitely ascertained and our own conviction is that to do so does not produce a just result. Moreover, the same considerations are present in sales of personal property, but they have never been considered to justify the abrogation of the rule applied to such sales.

That rule has been stated by us as follows: "Where, from the nature of the contract and the surrounding circumstances, the parties from the beginning must have known that it could not be fulfilled unless, when the time for fulfillment arrived, some particular thing or condition of things continued to exist, so that they must be deemed, when entering into the contract, to have contemplated such continuing existence as the foundation of what was to be done; in the absence of any express or implied warranty that such thing or condition of things shall exist, the contract is to be considered as subject to an implied condition that the parties shall be excused, in case, before breach, performance becomes impossible or the purpose of the contract frustrated from such thing or condition ceasing to exist without default of either of the parties." *Straus* v. *Kazemekas,* 100 Conn. 581, 591, 124 Atl. 234; see *Fischer* v. *Kennedy,* 106 Conn. 484, 490, 138 Atl. 503. We can find no sufficient reason for not applying

the same rule to contracts for the sale of real estate. In the latter as much as in those for the sale of personal property, the intention of the parties is that, when the time for performance is reached, the property bargained for shall pass; that intention is just as much frustrated in the one case as in the other by the destruction of the essential value of the property before the day of performance comes; and there is the same reason to imply as a condition of an obligation to perform the contract, that that value should continue to exist. *Thompson* v. *Gould,* 37 Mass. (20 Pick.) 134, 139; *Gould* v. *Murch,* 70 Me. 288.

In *Hough* v. *City Fire Ins. Co.,* 29 Conn. 10, we had before us an action upon a fire insurance policy issued to one who had contracted to buy the property insured but had not received a deed of it. The application for the policy requested that it be issued to the insured upon "his frame dwelling-house" and "his barn" and one condition of the policy was that if the interest of the insured in the property was "not absolute" this must be so represented or the policy would be void. The buildings having been destroyed by fire, the insurer contended that the representation of the insured that they were "his" buildings was untrue and that the condition in the policy had not been met. We held that the plaintiff had a vested interest in the property, dependent upon no contingency, and a right to it which he might enforce at his will and of which he could not be deprived without his consent, that he did not misrepresent when he referred to the buildings upon it as "his" and that his interest was not other than "absolute" as that word was used in the condition of the policy. It is true that we did in the opinion state that the risk of loss of property was upon the insured, and other courts, in reaching like conclusions, have sometimes given this as a reason for their deci-

sions. See *Petello* v. *Teutonia Fire Ins. Co.*, 89 Conn. 175, 93 Atl. 137; note, 60 A. L. R. 18. That reason is by no means a necessary foundation for such a rule, but it finds adequate basis in the nature of the equitable estate which the vendee acquires under a contract for the sale of land. *McCollough* v. *Home Ins. Co.*, 155 Cal. 659, 102 Pac. 814; *Johannes* v. *Standard Fire Office,* 70 Wis. 196, 201, 35 N. W. 298; note, 60 A. L. R. 18. Now that we are directly confronted with the question whether, under such a contract the risk of loss is upon the vendee, we are not able to accept as authoritative the statement in the *Hough* case that it is, at least where possession has not passed, but hold that risk of loss is upon the vendor.

It is true that in the ordinary contract for the sale of real estate, though a building upon it is destroyed by fire, the land remains and the inability of the vendor to perform does not go to the entire subject-matter of the contract; nor should the destruction of a building upon the land or a part of the buildings upon it in all cases discharge the vendee from his obligation to perform. Recognizing this, the Supreme Judicial Court of Massachusetts has stated that the vendee is not released "if the change in the value of the estate is not so great, or if it appears that the buildings did not constitute so material a part of the estate to be conveyed as to result in an annulling of the contract." *Hawkes* v. *Kehoe,* 193 Mass. 419, 425, 79 N. E. 766. In dealing with the discharge of contracts for the sale of personal property, the American Law Institute Restatement states that where a "material deterioration" of a specific thing which in the contemplation of both parties is necessary for the performance of a promise in a bargain occurs without the fault of the promisee, the duty to perform the contract, unless a contrary intent appears, is discharged,

except that the promisee has a qualified right to demand whatever performance remains possible; Amer. Law Institute Restatement, Contracts, § 460; and in Comment (e) to this section it states that the same rule applies where the subject-matter of the contract is partially destroyed. But in § 281 of the Restatement, though treating of a "prospective inability" to perform due to the destruction of the subject-matter of the bargain, the Restatement gives as a rule applicable to both present and future inability to perform that the promisor is discharged where "substantial performance" has become impossible; and in Comment (b) to this section it states: "Where the means of performance are impaired, but not destroyed, the determination of the question depends upon the degree of impairment."

The phrase "substantial performance" is one made familiar to us in those cases where a contractor is permitted to recover though he has failed, not wilfully, in part to perform his obligation but has substantially performed it; *Kelley* v. *Hance,* 108 Conn. 186, 187, 142 Atl. 683; and we have recognized that whether a contract has been substantially performed is ordinarily a question of fact. *Chinigo* v. *Ehrenberg,* 112 Conn. 381, 384, 152 Atl. 305. The test of substantial performance is more in accord with our legal conceptions and furnishes a sufficient test for the application of the rule we are considering. Whether there has been such performance must depend upon the circumstances of the particular case; the intention of the parties; the use to which the property is capable of being put or to which the vendor knows or should know that the vendee intends to put it, and the extent to which such use will be prevented or interfered with; the relative values of the land and the buildings, if they are wholly destroyed or, if only partially de-

stroyed, of the value of what remains to the value of the whole; and no doubt other considerations. Our conclusion is that, if by reason of the destruction or injury to the buildings upon real estate agreed to be conveyed between the time of the making of the contract and the time fixed for performance, it is no longer possible for the vendor substantially to perform the contract, the vendee may treat it as discharged.

The finding of the trial court that the burning of the dwelling-house upon the property had brought about a substantial failure of consideration is, for all practicable purposes, the equivalent of a finding that after the fire the defendant was no longer able substantially to perform the contract. The plaintiff was therefore entitled to treat it as discharged. The contract being discharged, the provision in it that if the plaintiff failed to make the further payments agreed upon he should forfeit the money paid in pursuance of it falls with the rest of it. He has paid a part of the purchase price but has received no benefit under the contract. He is therefore entitled to recover the sums so paid from the defendant. *Thompson* v. *Gould*, 37 Mass. (20 Pick.) 134, 142; *Wilson* v. *Clark*, 60 N. H. 352; 3 Williston, Contracts, § 1974. The trial court was correct in giving judgment for the plaintiff upon both the complaint and the counterclaim.

There is no error.

In this opinion HAINES and AVERY, Js., concurred.

BANKS, J. (dissenting). The ruling of the court presents this question: Where, after the execution of a contract for the sale of land and prior to the delivery of the deed, the buildings thereon are accidentally destroyed, upon whom should fall the burden of the loss, the vendor or the vendee? The plaintiff says that

an implied condition of the contract which the parties must have had in mind when it was entered into was the continued existence of the dwelling-house upon the property, that its destruction has made the contract impossible of performance, and relies on the rule that where a specific thing which is essential to the performance of a contract is destroyed the parties are excused from performance. *Straus* v. *Kazemekas,* 100 Conn. 581, 592, 124 Atl. 234; Amer. Law Institute Restatement, Contracts, Vol. 1, § 281. That rule is applicable if, at the time of the destruction of the dwelling, the vendor was its real owner, but not if the contract had been so far executed as to vest the ownership in the vendee. Cases which hold that the buyer is bound to pay in spite of the destruction of the building "are not exceptions to the rule stated in the section [281] since when recovery of the price is allowed, the result is based on the premise that the substantial incidents of ownership had already passed to the buyer before the destruction." Restatement, Contracts, Vol. 1, § 281, Comment c. The authorities all agree that the loss should fall upon the party who is the owner at the time, but differ as to whether the vendor or the purchaser is the owner. 66 C. J. 1052, § 811. The question, therefore, resolves itself into an inquiry as to who was the owner of the house at the time of the fire, and the answer to that inquiry will determine the incidence of the loss.

The legal title, of course, was in the defendant since the deed conveying the property to the plaintiff had not been executed or delivered at the time of the fire. But a binding contract of sale of the property, known with us as a bond for a deed, had been executed, delivered and recorded in the land records. The plaintiff thereby acquired the equitable title to the property. *Hough* v. *City Fire Ins. Co.,* 29 Conn. 10; *Miller Co.*

v. *Grussi,* 90 Conn. 555, 557, 98 Atl. 90; *Grippo* v.
*Davis,* 92 Conn. 693, 695, 104 Atl. 165; *Rienzo* v.
*Cohen,* 112 Conn. 427, 431, 152 Atl. 394; 27 R. C. L.
464. In *Hough* v. *City Fire Ins. Co.,* supra, we said
(p. 20) that one in possession of real property under
a contract of sale had acquired a right of which he
could not be deprived against his will, and was the
owner of an absolute interest, who must necessarily
bear the loss if the property were destroyed, and sus-
tained a charge of the trial court that a perfect legal
title was not essential to his recovery upon an insur-
ance policy, and that he might be regarded as the real
owner if he had the equitable title. "In some respects,
and for some purposes, the contract is executory in
equity as well as at law; but so far as the interest or
estate in the land of the two parties is concerned, it
is regarded as executed, and as operating to transfer
the estate from the vendor and to vest it in the vendee.
. . . The vendee is looked upon and treated as the
owner of the land; an equitable estate has vested in
him commensurate with that provided for by the con-
tract, whether in fee, for life, or for years; although
the vendor remains owner of the legal estate, he holds
it as a trustee for the vendee, to whom all the bene-
ficial interest has passed." 1 Pomeroy, Equity Juris-
prudence (4th Ed.) § 368. Under this doctrine of
equity the vendor has the bare legal title to the prop-
erty; all other incidents of ownership are vested in the
vendee who has acquired the full equitable estate. It
follows that the latter is entitled to all the benefits
accruing from such ownership, and at the same time
assumes all the burdens incident thereto. "Equity,
from the moment the contract is binding, gives the
vendee the entire benefit of the rise in value of the
land and all subsequent improvements, and any other
advantage that may accrue to the estate. If the

vendee is the owner in equity so as to receive all increment, he should be considered owner so as to accept the burden of any loss not due to the vendor's fault." 5 Pomeroy, Equity Jurisprudence (4th Ed.) § 2282.

Accordingly, in the early English case of *Paine* v. *Meller*, 6 Ves. 349, it was established as a general rule of equity that, when there was a binding contract capable of specific performance, loss by fire or other accident prior to the transfer of the legal title should fall upon the vendee. This would seem to be a necessary corollary of the accepted rule that the entire equitable interest in the property is then vested in the vendee. The great weight of judicial decisions in this country as well as text-writers upon the subject support this rule. 27 R. C. L. 555, § 293; 66 C. J. 1052, § 811; 22 A. L. R. 575; 41 A. L. R. 1272; 46 A. L. R. 1126. Indeed, an eminent authority has said that it is "a long-settled theory of courts of equity . . . sustained by the overwhelming weight of Anglo-American authority." Pound, The Progress of the Law, 33 Harvard Law Review, 828, note. Our own case of *Hough* v. *City Fire Ins. Co.*, supra, has been widely cited as an authority in support of the majority rule. *Thompson* v. *Gould*, 37 Mass. (20 Pick.) 134, announced the contrary doctrine since adhered to in Massachusetts and followed in a few jurisdictions. In that case there was no enforceable contract, the agreement to purchase being by parol. It was there said that the loss must fall on the owner of the property at the time the loss happened, but the court held that the vendor, being the holder of the legal title, was such owner. The opinion recognized that "a different doctrine has been adopted in equity, founded on the fiction that whatever is agreed to be done shall be considered as actually done," and that under that doctrine the purchaser must bear the loss. In the case of an agreement for

the sale of personal property, if the property is destroyed before the sale is completed and title passed the loss must ordinarily be borne by the vendor; and it was said in *Thompson* v. *Gould,* supra, that there is no reason why the same rule should not apply in the case of real estate. A contract to sell personal property without the transfer of possession gives only a personal right of action against the vendor for damages in case of a breach of the contract. A contract to sell real estate may be specifically enforced against the vendor and against anyone taking title from him with notice and the recording of the contract charges such taker with constructive notice. The vendee thus acquires the full *jus disponendi,* the substantial equivalent of a legal reversionary interest from the time when performance is due. Williston, 9 Harvard Law Review, 113, 119.

The majority opinion suggests that the vendee has not the entire beneficial interest in the property since, pending the time fixed for the performance of the contract, he has not a right to the possession and enjoyment of the property. Possession is not material with respect to the passing or existence of either legal or equitable title to land, and should not be as to the incidents of equitable title. See Pound, The Progress of the Law, 33 Harvard Law Review, 826, note 68.

The majority opinion apparently assumes that the rule that the vendee must bear the loss depends upon the doctrine of equitable conversion. It is unnecessary to resort to that doctrine to justify the rule; the loss is thrown upon the vendee simply because he is in equity substantially the owner of the property and justice requires that having the benefits he should bear the burden of ownership. Keener, 1 Columbia Law Review, 8.

Since the substantial incidents of ownership have

passed to the buyer, equity treats the contract as executed to the extent that the beneficial ownership of the property is vested in him, and the doctrine of impossibility of performance of an executory contract has no application. In my opinion the destruction of the dwelling-house did not relieve either party of the duty to perform on the ground of impossibility of performance of an executory contract, the loss should fall upon the plaintiff as the equitable owner, and he is not entitled to the return of his deposit.

In this opinion HINMAN, J., concurred.