In re Melvyn M. TISHLER, Susan E. Tishler, Debtors.

Bankruptcy No. 90–22879.

United States Bankruptcy Court, D. Connecticut.

Oct. 3, 1996.

Alan Rosner, Easton, CT, for Conrad Wiederhold and Marianne Wiederhold, Claimants.

Walter J. Onacewicz, Jr., Law Offices of Martin W. Hoffman, Hartford, CT, for Trustee.

## RULING AND ORDER ON REQUEST FOR PAYMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

#### ISSUE

On May 3, 1996, Martin W. Hoffman, ("Trustee") Trustee of the Chapter 7 case of

Melvyn M. Tishler ("Melvyn") and Susan E. Tishler, (together the "Debtors"), filed a motion, pursuant to Fed.R.Bankr.P. 9024, "to reopen" the Trustee's Final Report and Accounting (the "Accounting") in order to secure a determination of the validity of a claim being asserted by Conrad Wiederhold ("Conrad") and Marianne Wiederhold ("Marianne") (together "the Wiederholds"). The court, on May 14, 1996, granted the Trustee's motion and ordered that the Wiederholds file a formal claim by May 24, 1996, that the Trustee file a response by June 3, 1996, and that the matter be set for hearing on July 10, 1996.

The Wiederholds thereafter filed a pleading entitled "Request For Payment", in which they requested the court to order the Trustee to return to them a $5,000 deposit which they had delivered postpetition to the Trustee and which they assert he has "wrongfully retained." The Trustee admitted receiving the $5,000 deposit, denied he had wrongfully retained the deposit, and asserted that the Wiederholds' request for payment, in any event, is barred by laches. The hearing on the matter commenced and concluded on July 10, 1996.

## II.

### BACKGROUND

The Debtors filed a joint Chapter 7 petition on December 7, 1990. Their schedules of assets listed a one-half interest in real property known as 289 Puritan Road, Fairfield, Connecticut (the "Property"), owned by Melvyn. Estelle Tishler, Melvyn's mother, owned the remaining one-half interest. Several mortgages and liens encumbered the Property. The court notice to creditors indicated that the case was one. of no assets and did not set a bar date for the filing of claims.

In July 1991, the Wiederholds became interested in purchasing the Property and contacted the Trustee. On July 18, 1991, the Trustee mailed a letter to the Wiederholds, enclosing a key to the Property and authorizing them to inspect the Property. The Trustee thereafter received a letter, dated July 22, 1991, from Attorney David G. Volman ("Volman") on behalf of the Wiederholds, and enclosing the Wiederholds' $5,000 check as a deposit on a bid of $168,000 for the Property. The Trustee, by letter dated October 7, 1991, returned the $5,000 check directly to the Wiederholds advising them that "the Trustee will not be selling said property since there would not be any equity for the benefit of the estate." *Trustee Exh. E.*

By letters dated January 29, 1992 and January 31, 1992, Conrad informed the Trustee that he would increase the offer for the Property to $200,000 cash, plus payment of State and local conveyance taxes of $1,220 and outstanding real estate taxes of $6,165. Conrad enclosed a deposit check in the amount of $5,000 and payable to the Trustee. The Trustee wrote to Volman on February 5, 1992, confirming the address of the Property, the purchase price and advising that the "property will be sold subject to any interested party making a higher offer." *Trustee Exh. H.*

The Trustee, as required by Bankruptcy Code § 363(h), on February 25, 1992, filed a complaint to secure an order authorizing him to sell the interest in the Property of Estelle Tishler, the co-owner, as well as the interest of the joint estates, and to sell the Property free and clear of liens. The court entered a judgment on September 17, 1992, authorizing the sale of the Property free and clear of liens to the Wiederholds on the terms described "or to the highest bidder, if an auction is held" with liens encumbering the Property to attach to the proceeds, and acknowledging the right of the co-owner, under Code § 363(i), to purchase the Property. *Trustee Exh. J.* The Trustee subsequently gave notice to estate creditors of his intention to sell the Property and set October 13, 1992 as the date for a hearing to receive higher bids. No bids were received.

In the interim, in a letter dated September 23, 1992, Conrad advised the Trustee that he and his wife had temporarily moved to Germany, and that, in furtherance of the purchase of the Property, the Trustee could contact either Volman or Priscilla Sherman ("Sherman"), Marianne's mother, to whom the Wiederholds asserted that they had granted a Power of Attorney.

The Trustee advised the Wiederholds, by letter dated September 25, 1992, of the October 13, 1992 date for receipt of higher bids and suggested that they contact his office to see if any such bids were received. On November 17, 1992, the Trustee again wrote to the Wiederholds in Germany and advised that he was preparing documents of sale. He requested that they "advise when [they] would like to close on this property." *Trustee Exh. N.* The Trustee sent copies of the September 25, 1992 and November 17, 1992 letters to Volman and to Sherman. The Wiederholds had previously advised the Trustee that they intended to obtain mortgage financing for the purchase. The Trustee, on December 28, 1992, mailed a key to the Property to Sherman and requested that she "keep [him] informed as to the status of the closing on the property." *Trustee Exh. O.*

The Wiederholds, while still in Germany, learned that the Connecticut shoreline had suffered a major storm on December 12, 1992. They returned to Connecticut on or about December 31, 1992, and, on January 2, 1993, together with a contractor, inspected the Property. The Property had sustained major damage due to the storm. Conrad contacted the Trustee by telephone on January 4, 1993 and stated that, due to the storm damage, they were reducing their offer to $168,000. The Trustee, on or about January 12, 1993, rejected the new offer. The Wiederholds, back in Germany, sent the Trustee a letter dated January 13, 1993 detailing the damage to the Property, noting the rejection of their $168,000 new offer, and requesting a return of "our original $5,000 deposit in return for a release of our interest in the property." *Trustee Exh. P.* The Trustee received but did not reply to this letter.

Conrad sent a copy of the January 13, 1993 letter to the Office of the United States Trustee. A member of that office subsequently advised him to retain an attorney if he wished to litigate his claim. Conrad testified that he decided to do nothing further at that time, since he was living in Germany

and the cost of travel to the United States to pursue the claim was prohibitive.

On January 21, 1993, the Trustee sent creditors of the Debtors' estate a notice of abandonment of the interest of Melvyn's estate in the Property. On July 20, 1994, the Trustee reported to the clerk's office that the estates now contained assets, and the court set October 18, 1994 as a bar date for creditors to file claims. Five creditors filed proofs of claim totaling $234,397.59. The Trustee, on June 13, 1995, filed the Accounting after review by the United States Trustee. The clerk's office scheduled a hearing for any objections to the Accounting for August 15, 1995. The hearing was continued to September 26, 1995 at which time no party in interest appeared in opposition to the Accounting.[1] The Trustee, on November 2, 1995, certified that he had issued checks to administrative claimants and to creditors in accordance with the appropriate Code provisions.

By letter dated November 27, 1995 to the Trustee, Attorney John P. Sherman advised that he had been retained by the Wiederholds to seek return of the $5,000 deposit. The Trustee responded by letter dated December 13, 1995, stating that all funds in the estate had been disbursed for administrative expenses and a distribution to creditors, that the $5,000 deposit constituted a nonrefundable deposit "and since the sale was not consummated by the Wiederholds, such deposit was retained by the estate to offset the estate's damages."

On April 10, 1996, Attorney Alan Rosner advised the Trustee that he now represented the Wiederholds. Attorney Rosner, on April 18, 1996, wrote to the Trustee, making demand for the $5,000 deposit and stating that the Wiederholds' intended to resort to further actions if the matter was not resolved by May 3, 1996. As noted, on May 3, 1996, the Trustee initiated the basis for the present proceeding by filing his motion to reopen and obtaining an order reopening the matter of

---

1. Fed.R.Bankr.P. 5009 provides that "[i]f in a chapter 7, chapter 12, or chapter 13 case the trustee has filed a final report and final account and has certified that the estate has been fully

administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered."

the Accounting and setting a hearing date for the Wiederholds' claim.

## III.

### ARGUMENTS OF THE PARTIES

The Wiederholds assert that, although they agreed to purchase the Property for $200,000 subject to certain taxes, under the Connecticut Statute of Frauds, Conn.Gen. Stat. § 52–550, no written contract for the sale of the Property was entered into so that the Trustee has no basis for retaining the $5,000 deposit; that certain relevant terms of a contract for the sale of the Property had never been agreed upon such as the refundable nature of the deposit, date of closing and condition of property at closing; that if an enforceable contract for the sale of the Property is found to exist, the Trustee breached the contract by failing to preserve the value of the Property; that the risk of loss to the Property during the contract period rested on the Trustee; that they are entitled to a return of their deposit under principles of equity because they did not wilfully breach the contract and the Trustee was unjustly enriched; and that their written demand for return of the deposit made on January 13, 1993 represented a timely, if informal, request for payment, which the Trustee had not objected to in writing prior to the filing of the Accounting.

The Trustee contends that a valid contract of sale had been executed with the Wiederholds for the Property; that the Statute of Frauds does not render the contract unenforceable; that the Wiederholds breached the contract by neglecting to consummate the purchase within a reasonable time and thereby are barred from recovering their deposit; that the Wiederholds are barred by laches from recovering the deposit because they waited almost three years (January 13, 1993 to November 27, 1995) to pursue their claim, during which period the Trustee distributed all funds of the estate.

## IV.

### DISCUSSION

#### A.

The parties initially disagree as to whether an enforceable contract existed for the sale of the Property. Conn.Gen.Stat. § 52–550 provides, in relevant part, that "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged ... (4) upon any agreement for the sale of real property or any interest in or concerning real property." The Connecticut courts have construed this statute to "require[ ] that the essential terms and not every term of a contract be set forth therein." *Fruin v. Colonnade One at Old Greenwich Limited Partnership, et al.*, 38 Conn.App. 420, 426, 662 A.2d 129, 133 (1995), *cert. granted in part*, 235 Conn. 916, 665 A.2d 607 (1995), *aff'd*, 237 Conn. 123, 676 A.2d 369 (1996). "To comply with the statute of frauds, 'an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement.'" *Breen v. Phelps*, 186 Conn. 86, 92, 439 A.2d 1066 (1982) (citing, *Montanaro v. Pandolfini*, 148 Conn. 153, 157, 168 A.2d 550 (1961)). The requirements of the statute are fulfilled either by one document or by a series of related writings which, taken together, address the essential terms and conditions of the contract. *Heyman v. CBS, Inc.*, 178 Conn. 215, 221, 423 A.2d 887, 891 (1979). A contract is enforceable despite the fact that it does not specify a time for performance. Where not otherwise specified in writing, the law implies that the closing shall occur within a reasonable time. *Breen v. Phelps*, 186 Conn. at 93, 439 A.2d at 1072. ("The mere absence of a time for performance in a contract of sale does not ordinarily make it unenforceable, because the law will imply a reasonable time for performance if none has been specified.") Connecticut courts "prefer interpretations that find agreements sufficiently definite to satisfy the statute of frauds." *Fruin v. Colonnade One*, 38 Conn. App. at 427, 662 A.2d at 133 (citing *Montana-*

*ro Bros. Builders, Inc. v. Snow,* 190 Conn. 481, 485–86, 460 A.2d 1297 (1983)).

Taken together, the letters written by the Trustee and the Wiederholds constitute a meeting of the minds sufficient to form an enforceable contract. The correspondence identified the price of $200,000 plus the assumption of certain taxes, the property located at 289 Puritan Road, Fairfield, Connecticut as its subject, and the identity of the parties to the contract. The court finds that the Trustee and the Wiederholds entered into an enforceable contract which satisfies Conn.Gen.Stat. § 52–550. The lack of a specific closing date in the correspondence is not fatal. Time for performance does not constitute an essential term because the law implies that the closing would occur within a reasonable time.

■ Based upon the circumstances established by this record, the court concludes that the Wiederholds were not in breach of the contract and that the reasonable time for closing had not expired by the date of the winter storm on December 12, 1992. The Trustee's letter of December 28, 1992, *Exh. Q,* does not indicate that the Trustee is considering a claim of breach of contract for failure to close.

■ Under Connecticut law the risk of loss to property remains on the seller during the executory period of the contract of sale. "[I]f by reason of the destruction or injury to the buildings upon real estate agreed to be conveyed between the time of the making of the contract and the time fixed for performance, it is no longer possible for the vendor substantially to perform the contract, the vendee may treat it as discharged." *Anderson v. Yaworski,* 120 Conn. 390, 400, 181 A. 205 (1935). The *Anderson* court reasoned that an implied condition of an obligation to perform a contract is that the essential value of the property bargained for shall continue to exist. 120 Conn. at 397, 181 A. at 205. It concluded that the destruction constituted a "substantial failure of consideration" and that a purchaser was entitled to a return of deposits paid the seller. 120 Conn. at 400, 181 A. at 205.

In the case at bar, as the parties did not provide otherwise in writing, the Trustee bore the risk of damage to the Property. Based upon the record, the court concludes that damage to the Property was sufficiently severe that the Wiederholds were entitled to demand a return of their deposit, as requested in their letter of January 13, 1993 to the Trustee.

### B.

■ The Trustee asserts that the Wiederholds are barred by laches from asserting their claim through their failure to contact the Trustee from January 13, 1993 to November 27, 1995. Laches is an equitable defense, employed instead of a statutory time-bar. *Conopco, Inc. v. Campbell Soup Company,* 95 F.3d 187 (2d Cir.1996). A claim of laches requires the court to examine the equitable circumstances peculiar to each case to determine whether the plaintiff in asserting her rights was guilty of unreasonable delay that prejudiced the defendants. *See Stone v. Williams,* 873 F.2d 620, 623–24 (2d Cir.1989), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), *opinion vacated on other grounds,* 891 F.2d 401 (2d Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1989). *Cf. In re Caicedo,* 159 B.R. 104 (Bankr.D.Conn.1993).

The Trustee's assertion of laches to bar the Wiederholds' claim is weakened considerably by the circumstance that he never advised the Wiederholds in writing that he, as Trustee, was objecting to their claim. While the Wiederholds may have inferred that the Trustee would not voluntarily return their deposit when he did not respond to their claim of January 13, 1993, it was the Trustee's obligation to dispose of their claim in the bankruptcy court by objecting to the claim prior to filing his Accounting. The court concludes that the Trustee's defense of laches cannot prevail to bar the Wiederholds' claim, notwithstanding that the Trustee distributed the $5,000 deposit for administrative expenses and to creditors. The Trustee will be required to recover all distributions he has made. *Cf. In re Crotts,* 87 B.R. 418, 421 (Bankr.E.D.Va.1988) (trustee ordered to recover all distributions made in order to cor-

rect failure to pay priority creditor); *In re Kelderman,* 75 B.R. 69, 70 (Bankr.S.D.Iowa 1987) (trustee ordered to recover excess distributions when a filing creditor inadvertently omitted from final accounting).

### V.

### *CONCLUSION*

The court concludes that the Wiederholds sufficiently and timely made a demand upon the Trustee for the return of their $5,000 deposit; that the Trustee should not have filed his Accounting without securing a determination from the court as to the validity of the Wiederholds' claim; and that the Wiederholds, following the reopening of the Accounting, have established their right to a return of the $5,000 deposit in light of the severe damage to the Property during the contract period. The Trustee shall take the necessary steps to return to the Wiederholds the $5,000, including an attempt to recover the distributions he previously made for administrative expenses and to creditors. The Trustee shall promptly thereafter file an amended Accounting.

The Wiederholds' request for interest and attorney's fees is denied. It is

SO ORDERED.