[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO REDUCE PURCHASE PRICE OR SET ASIDE SALE
Alliance Properties, LLC ("Alliance"), the successful bidder at a foreclosure sale, seeks a reduction in the sale price or a cancellation of the contract of sale and a return of its deposit due to the fact the building was substantially damaged after the auction. The plaintiff, CitiFinancial Mortgage Company, Inc. ("CitiFinancial"), claims that this court lacks jurisdiction to grant relief because the sale has been confirmed. CitiFinance also argues that, pending a committee's transferring title, a successful bidder assumes the risk of loss from damage to property once a sale has been confirmed. For the reasons stated below, this court vacates the sale and orders all but $6,334.72 of the deposit to be returned to Alliance.
The following facts are relevant. Pursuant to court order, the committee conducted the foreclosure auction on October 5, 2002. A few weeks before the auction, an appraiser valued the property at $210,000.00 with $50,000.00 of the value allocated to the lot and $160,000.00 to the building, which is a two and a half story wood framed structure that was erected as a single-family residence in 1912 and converted around 1972 into professional office space. Alliance, who was not a party to the foreclosure proceeding, submitted a successful bid of $186,100.00, gave the committee a deposit of $20,000.00, and signed a bond for deed wherein it promised to pay the committee the further sum of $166,100.00 "on the date of transfer and closing . . ."
On December 3, 2002, the court, Stevens, J., approved the sale. The clerk of the court thereafter, pursuant to court order, disbursed $6,334.72 for the committee's fee and costs and the appraiser's fee.
On December 9, 2002, Alliance received notification by telephone that the court had approved the sale. Prior to this date, Tim Burke, one of the Alliance partners, received a telephone call from a real estate broker who reported hearing the sound of running water coming from the CT Page 2905-i interior of the building. Burke immediately inspected the premises and discovered water was running freely from a broken water pipe in the third floor attic down into the rooms on the lower floors. Cold, windy weather had caused the pipe to freeze and break.
No one claims that the mortgagor is to be blamed for the water damage. Until the day of the auction, a law firm occupied the building. At the time of the auction, the mortgagor's debt was approximately $184,000.00.
On December 19, 2002, Alliance through its attorney filed an appearance in this case, obtained an order extending the time to close, and disclosed that it might seek an order reducing the price. Alliance now wants this court to reduce the price by $104,000 or to cancel the transaction and return its deposit.
After discovering the damage, Burke had the building examined by a public adjuster. Ceilings, walls, flooring, and other things were damaged throughout the building as shown by photographs. See Exhibits 2 through 29. Alliance has shown that it will cost $86,000.00 to repair the water damage. In addition, it will cost $18,000.00 to remove mold that was caused by the water damage. This evidence, as the plaintiff correctly points out, does not show that the market value has been diminished by $104,000.00. It does, however, show that the property has been extensively damaged and that the market value has been substantially reduced.
Burke tried to find out if the mortgagor or mortgagee had insurance coverage for the loss. He was told by the mortgagor that the mortgagor's insurance policy had lapsed. The mortgagee, CitiFinancial, told Burke that it did not know whether or not it had coverage. The court notes that the mortgage deed provides that the mortgagee may insure the property at the mortgagor's expense "in a sum not exceeding the amount of Mortgagor's indebtedness for a period not exceeding the term of such indebtedness." The court's orders pertaining to the auction do not provide for insuring the building against property damage.
CitiFinancial, in opposing Alliance's motion, first contends that this court lacks jurisdiction to entertain Alliance's motion. CitiFinancial relies on dicta in a footnote from Northeast Savings, F.A. v. Hopkins,22 Conn. App. 396, 399 n. 3, 578 A.2d 136 (1990), which states, in part, "a motion to open the judgment of foreclosure by sale has two restrictions. It must be filed within the four month restriction of § 52-212a and this motion must be filed before the committee sale is approved." Upon analysis,[1] this trial court concludes that the quoted footnote does not enunciate a rule that a trial court's power to open a CT Page 2905-j judgment and set aside a sale ends the moment a sale is confirmed. Rather, in the absence of fraud or mistake, this court has power to set aside a confirmed sale until such time as legal title has been transferred by the committee.
In Citicorp Mortgage, Inc. v. Burgos, 227 Conn. 116, 629 A.2d 410
(1993), our Supreme Court held that a trial court has the power to set aside a sale after confirmation if equitable principles so demand. The events in Burgos that gave rise to the purchaser's motion to set aside, like events relied upon by Alliance in the present case, arose after the sale was confirmed but before the closing. "Broadly speaking, a court has power to vacate an order of confirmation, provided good cause exists and the assets are still within its control." 50A C.J.S., Judicial Sales § 35. Since legal title has not been transferred by the committee, this court has jurisdiction to rescind the contract if equitable principles demand such relief.
The plaintiff next contends that the risk of loss caused by damage to the property passed to the successful bidder upon the court's confirmation of the sale. No such rule has been enunciated by our appellate courts, although there is dicta in appellate and trial court opinions that a court's confirmation has such effect.[2] Burgos, however, clearly stands for the proposition that the trial court may "reluctantly" set aside a sale if the closing has not yet occurred. It does not stand for the proposition that the risk of loss automatically passes to the successful bidder on confirmation of the sale.
A successful bidder does incur some risk with respect to property damage. Justice Katz, in a footnote to a dissenting opinion filed in NewEngland Savings v. Lopeza, 227 Conn. 270, 295, n. 7, 630 A.2d 1010
(1993), made the observation that "only a few people participate in the bidding process because few people can afford the risks associated with such auctions, including but not limited to . . . assumption of damage to property." This statement, which CitiFinancial claims shows that the risk of loss passes upon the confirmation of a sale, was not made in the context of reviewing a court's power to grant equitable relief in circumstances similar to those in the present case.[3] The encyclopedic source cited as authority for the footnoted observation provides in one section that where some special ground is alleged "which has caused injustice to the party complaining and was unknown to him or her at the time the sale was confirmed . . . the sale may be set aside." 47 Am.Jur.2d ___, Judicial Sales § 359. This court concludes that, while a successful bidder does assume some risk, the bidder may nevertheless seek equitable relief where property has been substantially damaged after confirmation but before the transfer of legal title. CT Page 2905-k
In support of its motion, Alliance claims that the rule enunciated inAnderson v. Yaworsky, 120 Conn. 390, 181 A. 205 (1935) applies to this case and argues that under this rule a purchaser at a foreclosure auction does not assume any risk from damage until legal title has been transferred. In Anderson, the court held as follows: "Our conclusion is that, if by reason of the destruction or injury to the buildings upon real estate agreed to be conveyed between the time of the making of the contract and the time fixed for performance, it is no longer possible for the vendor substantially to perform the contract, the vendee may treat it as discharged." Id. at 400. Alliance, like the vendee in Anderson, presently stands as a contract purchaser under a completed contract. See,Mariners Savings Bank v. Duca, 98 Conn. 147, 152, 118 A. 820 (1922) ("For until confirmation, the bids are mere offers to purchase, the contract is not complete, and the purchaser cannot be in default thereunder"). This court, however, does not construe Anderson as leading to a bright-line rule that the risk of loss from damage remains on the mortgagee until title has passed to the successful bidder. Rather, this court concludes that equitable principles should apply in a foreclosure case.
The following factors show that equitable relief should be granted. The water damage caused a substantial reduction in the market value of the property. The damage was not due to the fault of any of the parties to this proceeding. None of the parties changed position in reliance on the court's confirmation of the sale. Alliance is not presently in default under the bond for deed.
No one other than CitiFinancial and Alliance has shown an interest in this issue. Alliance moved for relief within a short time after the damage occurred. CitiFinancial could have insured itself against the loss.
For relief, Alliance requests either a reduction in the purchase price or rescission of the contract of sale and a return of its deposit. There is no basis for this court to set a new purchase price, although all interested parties could, with court approval, agree on a new price. Setting aside the sale is the appropriate remedy. With respect to the deposit, the court notes that Alliance did not file an appearance in court as soon as it became the successful bidder although it could have done so. If it had done so, it could have taken a position as to whether committee fees and expenses should be paid before the anticipated closing. At the time Alliance signed the bond for deed, it was put on notice that it could forfeit the deposit should it not make the payments stated in the contract. The court concludes that a partial forfeiture should result since Alliance did not attend the confirmation hearing. CT Page 2905-l
Based on the foregoing, the judgment confirming the sale is set aside and all but $6,334.72 of the deposit is ordered to be returned to Alliance. The plaintiff may move for a new sale.
THIM, J.