943 A.2d 22

HOWARD COUNTY, Maryland

v.

HEARTWOOD 88, LLC.

No. 3011, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Feb. 28, 2008.

Lynn A. Robeson (Margaret Ann Nolan, County Solicitor on the brief), Ellicott City, for Appellant.

Brief not submitted.

Panel: DEBORAH S. EYLER, BARBERA and JAMES A. KENNEY, III, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

This case is a dispute over whether Howard County ("the County"), the appellant, is obligated to pay interest on money it refunded to Heartwood 88, LLC ("Heartwood"), the appellee, a tax sale purchaser of property for which not only were

no taxes owed, none ever should have been assessed. We are called upon to decide whether, when an action to foreclose a right of redemption in a property is pending in circuit court, and the local government that held the tax sale then learns that the unpaid taxes for which the property was sold at tax sale never were assessable, the tax collector can declare the tax sale void, under the contractual terms of the tax sale, or whether only the court, pursuant to section 14–848 of the Tax–Property Article, can declare the tax sale void. We hold that the tax collector can declare the tax sale void.

On July 20, 1999, the property at issue ("Property") was conveyed by recorded covenants from Elkhorn Associates, LLLP ("Elkhorn"), to the Allen & Shariff Condominium ("A & S"). The Property is part of the general common elements (actually, the parking lot) of the A & S condominium regime. Once conveyed as such, the Property no longer was an independently taxable parcel of land.

The covenants conveying the Property properly were recorded in the Land Records of Howard County. The Maryland State Department of Assessments and Taxation ("SDAT") misinterpreted the covenants and a recorded plat of the condominium, however, and continued to assess taxes against the Property, in error. When the taxes were not paid for two years, the Property was included in the County's annual tax sale, on June 6, 2001. All bidders at that tax sale signed written "Terms of the 2001 Tax Sale" issued by the County's Department of Finance. One of the terms of the tax sale stated:

> D. VOIDED SALE. Whenever a tax sale on a property is voided, for any reason, the Purchaser will be notified and advised not to pursue any further foreclosure action or to incur additional expenses. *Reimbursement will be limited to the amount paid at the sale unless otherwise required by law.*

(Emphasis added.)

Heartwood purchased the Property, and five others, at the

June 6, 2001 tax sale.[1] About two years later, on March 27, 2003, it filed suit in the Circuit Court for Howard County to foreclose the rights of redemption in all six properties. Elkhorn was named as a defendant, as was Howard County. With respect to the Property, Heartwood alleged that "a search and examination of the Land Records of Howard County" had been made "for more than forty years last past" and had "revealed the fee simple title or other legal interest" in the Property in Elkhorn at the time of the tax sale, "as shown in the Affidavit of [Title] Search, filed herewith and made a part hereof." The attached Affidavit of Title Search, signed by Heartwood's lawyer, indeed stated that a title search of the land records had revealed, with respect to the Property, an address of "Deepage Drive" and fee simple title vested in Elkhorn "by deed from Elkhorn Associates Limited Partnership, dated July 24, 1998, and recorded on October 13, 1998, at Liber 4463 Folio 591." In fact, a complete search of the Howard County Land Records would have revealed the July 20, 1999 covenant by which the Property was conveyed to A & S.

Heartwood never obtained service over Elkhorn in the action to foreclose right of redemption. For most of the pendency of the action, it did not have service over Howard County. It eventually served the title owners of the other five properties. Ultimately, they redeemed their rights in their properties and were dismissed from the suit.

Sometime in late May 2006, more than three years after Heartwood filed the action to foreclose right of redemption in the Property, the SDAT realized its error. Charles Watson of the SDAT contacted Linda Watts, the County's Director of Finance, and told her he had learned from a representative of A & S that the Property was part of the general common

---

1. The Property is described in the certificate of tax sale as follows:
   IMPSLOT C–5 .6420A
   DEEPAGE DRIVE
   VIL OWEN BROWN S 2 AR 2
   Liber 4463/Folio 0591

elements of the condominium and had been so since July 20, 1999. From that date forward, the SDAT should not have assessed any taxes against the Property. The SDAT planned to correct its error by consolidating the Property with the parent tax account for the condominium regime and reducing the taxes attributable to the Property to zero, retroactive to July 20, 1999. In fact, that corrective measure was taken on June 1, 2006.

On May 31, 2006, a few days after Mr. Watson contacted Ms. Watts, Heartwood's lawyer received a letter from a third-party title company informing him that the State and County had "reduced the taxable assessment (and real estate taxes) [for the Property] to zero for the years 2000–2006" and that Ms. Watts had confirmed that the County was going to refund the tax sale payment to Heartwood, as the tax sale purchaser.

Heartwood's lawyer contacted Ms. Watts the next day complaining that, with the action to foreclose right of redemption in the Property pending in circuit court, the County had no power to invalidate the tax sale. Only the circuit court had the power to do so, pursuant to Md.Code (2001, 2007 Repl. Vol.), section 14–848 of the Tax–Property Article ("TP"). Moreover, if the court were to declare the tax sale void under that statute, Heartwood would be entitled to repayment of the purchase price *and*

> interest at the rate provided in the certificate of tax sale, together with all taxes that [had] accrue[d] after the date of sale, which were paid by the holder of the certificate of sale or the predecessor of the holder of the certificate of sale, and all expenses incurred in accordance with this subtitle.

TP § 14–848. The certificate of tax sale bore an interest rate of 18%.

Lawyers for the County countered that, notwithstanding the pendency of the foreclosure of right of redemption action, the "Terms of the 2001 Tax Sale" gave the County the right as a matter of contract to declare the tax sale void, so long as doing so was not contrary to law, which it was not. The County merely was exercising that contractual right. Under the

"Terms of the 2001 Tax Sale," Heartwood was entitled to a refund of the purchase price paid for the Property, without interest or expenses.

On June 5, 2006, in the foreclosure action, Heartwood filed a "Line," requesting the re-issuance of a summons for Elkhorn, Howard County, and certain other defendants that had not been served. Soon thereafter, the County was served. A week later, Heartwood filed a motion, under TP section 14–848, to declare the tax sale void. The County filed an opposition to Heartwood's motion and a motion to dismiss. Heartwood filed a reply memorandum. The court heard argument of counsel on the matter. On January 24, 2007, it issued a Memorandum Opinion granting Heartwood's motion, setting aside the tax sale as void, and ordering the County to pay Heartwood in accordance with TP section 14–848.

The County noted this timely appeal.[2] It poses three questions, which can be reduced to one:

> Did the circuit court err as a matter of law in ruling that the tax sale was invalid and that Heartwood is entitled to reimbursement as provided in TP section 14–848?

For the following reasons, we shall reverse the judgment of the circuit court and remand the case with instructions to enter an order dismissing the action to foreclose right of redemption.

## DISCUSSION

The material first-level facts are not in dispute. The issue decided by the circuit court, and pursued by the County on appeal, is purely legal. Accordingly, we decide it *de novo*. *Hall v. Univ. of Md. Med. Sys. Corp.*, 398 Md. 67, 82, 919 A.2d 1177 (2007).

A tax sale under Title 14, Subtitle 8, Part III of the Tax–Property Code ("the Tax Sale Statute") is a tax collection mechanism for local governments. *Scheve v. Shudder, Inc.*,

---

**2.** Heartwood did not file a brief in this Court or participate in the appeal in any way.

328 Md. 363, 369, 614 A.2d 582 (1992). With certain exceptions, when taxes on a property within a local subdivision are not paid for a period of two years, the tax collector "shall proceed to sell and shall sell under this subtitle ... all property in the county in which the collector is elected or appointed on which the tax is in arrears." TP § 14–808(a). The purchaser at tax sale receives a tax sale certificate. TP § 14–820(a). Within the time specified in TP section 14–833, the purchaser (or certificate holder, if the certificate has been assigned) can bring suit to foreclose the right of redemption of the title owner (and of any other person having an estate or interest in the property). To redeem the property, the title owner must pay the total price paid at the tax sale, plus interest; any taxes, interest, and penalties paid by the tax certificate holder; any taxes, interest, and penalties accruing after the date of the tax sale; and all actual expenses incurred by the certificate holder. TP § 14–828. The redemption rate of interest is set in TP section 14–820(b). If the right of redemption is finally foreclosed under the Tax Sale Statute, the tax sale purchaser receives fee simple title to the property by deed from the local government. TP § 14–844.

The outcome of the case at bar turns on the application *vel non* of TP section 14–848, entitled "Judgment declaring sale void." The relevant language in that section provides:

If the judgment of the court [in a foreclosure of right of redemption action] declares the sale void and sets it aside, the collector shall repay the holder of the certificate of sale the amount paid to the collector on account of the purchase price of the property sold, with interest at the rate provided in the certificate of tax sale, together with all taxes that accrue after the date of sale, ... which were paid by the holder of the certificate of sale or the predecessor ..., and all expenses properly incurred in accordance with this subtitle. ... The collector shall proceed to a new sale of the property under this subtitle and shall include in the new sale all taxes that were included in the void sale, and all unpaid taxes that accrued after the date of the sale declared void.

On appeal, the County argues as it did below that the facts in this case did not trigger application of TP section 14–848. Rather, they triggered the County's contractual right, separate from and not inconsistent with the Tax Sale Statute, and established by the "Terms of the 2001 Tax Sale," to void the sale and refund the sum paid by the tax sale purchaser. If the County is correct, it has no obligation to pay 18% interest or expenses on the purchase money refunded to Heartwood.

The court in its memorandum opinion and the County in its brief rely upon this Court's decision in *Heartwood 88, Inc. v. Montgomery County,* 156 Md.App. 333, 846 A.2d 1096 (2004) (*"Montgomery"*). In that case, the Montgomery County tax collector sold 331 properties to a single tax sale purchaser. Before any action to foreclose right of redemption was filed, the tax sale purchaser discovered that the properties had been sold in error, as Montgomery County already had collected the taxes in full before the date of sale. The tax collector refunded the purchase monies for all the tax sales, plus 8% interest, as provided in the tax sale certificates.

The tax sale purchaser protested, demanding payment of the "redemption rate" of interest, *i.e.,* the rate that would have applied had the sale been valid and had the title owners then redeemed their properties. Under TP section 14–820(b), the "redemption rate" is either 6% or a percentage adopted by the county in which the property is located. At that time, Montgomery County's "redemption rate" was 20%, comprised of 8% interest and a 12% penalty. The tax sale purchaser also demanded payment of expenses and counsel fees under TP section 14–843. When Montgomery County refused to pay either, the tax sale purchaser brought a declaratory judgment action seeking to have the sale declared void, pursuant to TP section 14–848.

The circuit court ruled that the tax sale of the 331 properties was void at its inception, and so there was no tax sale to declare invalid, and TP section 14–848 had no application. Unhappy with that result, the tax sale purchaser appealed, arguing that, as the holder of the tax sale certificates, it was

entitled to bring suit to foreclose rights of redemption against the title owners; to have the court declare the tax sales void, under TP section 14–848; and then to receive 20% on its refunded tax sale payment because (in its view) "interest rate" as used in TP section 14–848 in fact meant the "redemption rate" of the county in question.

An appeal was taken to this Court. Noting that there was no dispute that the tax sales were invalid, as no taxes were owed when the properties were sold for taxes, we observed that, for a circuit court to declare a tax sale void under TP section 14–848, there must be a pending action to foreclose right of redemption and the defendant must have answered raising the invalidity of the taxes or of the proceedings, so as to rebut the presumption of regularity in the tax sale established by TP section 14–842.[3] The tax sale purchaser in *Montgomery* could not have brought such an action, however, because the tax sales were void from the inception and consequently there were no rights of redemption to foreclose; and without a filed complaint to foreclose right of redemption, the record owners could not file answers challenging the validity of the tax sales under TP section 14–842. We concluded, on that basis, that TP section 14–848 never was triggered and, therefore, there was no bar to Montgomery County itself declaring the tax sales void, under the terms governing the auction.[4]

---

**3.** That section states:

In any proceeding to foreclose the right of redemption, it is not necessary to plead or prove the various steps, procedure and notices for the assessment and imposition of the taxes for which the property was sold or the proceedings taken by the collector to sell the property. The validity of the procedure is conclusively presumed unless a defendant in the proceeding shall, by answer, set up as a defense the invalidity of the taxes or the invalidity of the proceedings to sell or the invalidity of the sale. A defendant alleging any jurisdictional defect or invalidity in the taxes or in the proceeding to sell, or in the sale, must particularly specify in the answer the jurisdictional defect or invalidity and must affirmatively establish the defense.

**4.** We also observed that, even if TP section 14–848 were applicable, the tax sale purchaser was incorrect in its assertion that, under that section, it was entitled to the Montgomery County "redemption rate" in

We return to the case at bar. In its Memorandum Opinion, the circuit court reasoned as follows. Here, unlike in *Montgomery*, the error underlying the tax sale was discovered *after* the tax sale purchaser already had filed an action to foreclose the title owner's right of redemption. Because, under TP section 14–834, the circuit court has jurisdiction to grant "complete relief" in an action to foreclose the right of redemption in a property, and also because TP section 14–851 states that "[a]ny tax sales made or instituted after December 31, 1943, shall be made only in accordance with" TP sections 14–801 through 14–854, only it (the court) had the power to declare the tax sale invalid. Therefore, the County could not itself invalidate the sale, under the "Terms of the 2001 Tax Sale." And the court's power to declare the sale invalid is governed by TP section 14–848, under which Heartwood, upon such a declaration, is entitled to interest on the refunded purchase money as stated in the certificate of tax sale, *i.e.*, 18%.

The County contends that the *Montgomery* case is controlling but dictates a result contrary to that reached by the circuit court. It argues that *Montgomery* stands for the proposition that, for the court to declare a tax sale void under TP section 14–848, there must be a right to redeem the property that is the subject of the tax sale. Here, because no taxes ever were owed, as no taxes ever should have been assessed, the tax sale was void at its inception (as was the case in *Montgomery* ), and therefore there is no right of redemption. When no right of redemption exists, an action to foreclose right of redemption cannot be pursued; and TP section 14–848 only applies in such an action. It makes no difference that, in this case, the suit to foreclose already had been filed when the SDAT discovered its error, while in *Montgomery*, the error was discovered before any such action was filed. In both situations, there is no right of redemption to foreclose.

---

interest. Pursuant to TP section 14–848, the most the tax sale purchaser could have been entitled to was interest as provided in the tax sale certificate, and that interest was 8% (which already had been paid), not interest and penalties totaling 20%.

Filing an action to foreclose a right of redemption cannot create a right of redemption that no longer exists, or never existed to begin with.

■ Our starting point in deciding whether TP section 14–848 applies to the novel circumstances of this case is the statutory language itself. In *Scheve, supra,* 328 Md. at 371–72, 614 A.2d 582, the Court of Appeals observed in a suit to foreclose right of redemption:

In construing a legislative enactment the fundamental judicial task is to determine and effectuate the legislature's intent, and indeed the very language of the statute serves as the primary source of the legislature's intent. *See, e.g., Revis v. Maryland Auto. Ins. Fund,* 322 Md. 683, 686, 589 A.2d 483, 484 (1991); *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188, 191 (1990). To accomplish this task, "the words of the statute are to be given their ordinary and natural import...." *Revis,* 322 Md. at 686, 589 A.2d at 484. In addition, the language of the statute must be considered along with the statute's stated policy that its provisions "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption ... and for the decreeing of marketable titles to property sold by the collector." § 14–832.

TP section 14–848 (quoted in relevant part above) prescribes what happens when, in an action to foreclose right of redemption in property sold for taxes, the circuit court declares the tax sale void and sets it aside. In mandatory terms, it dictates that, upon entry of such a judgment, the tax collector: 1) shall repay the tax certificate holder, as further specified; 2) is entitled to be refunded the amount of any claims paid to other taxing agencies; and 3) "shall proceed to a new sale of the property under this subtitle and shall include in the new sale all taxes that were included in the void sale, and all unpaid taxes that accrued after the date of the sale declared void."

For a new tax sale of the same property to be conducted by the tax collector, there must be properly assessed unpaid

taxes on the property. If taxes improperly were assessed against the property, so none are owed, or if taxes properly were assessed and were paid, so none are owed, the property is not subject to sale for taxes. By its plain language, therefore, TP section 14–848 cannot cover a tax sale that is void from its inception due to an error in assessing any tax to begin with or due to there not being any tax arrearage for which to sell the property. It only can cover a tax sale that was procedurally invalid or erroneous but correctable.

Our reading of the language of TP section 14–848 is consistent with our holding in *Montgomery*, that, when a tax sale is void from its inception, there is no right of redemption in the erroneously sold property, and therefore no predicate for a suit to foreclose right of redemption. To be sure, in *Montgomery*, the tax sale purchaser had not yet filed suit when the error in selling the property was discovered, and it would not have been able to do so, in part because it could not represent, as required in filing an action to foreclose right of redemption, under TP section 14–835(a)(3), that the defendant title owners had a right to redeem their properties. The existence of such a suit is a necessary prerequisite to application of TP section 14–848, as is a response challenging the validity of the tax sale procedure, under TP section 14–842.

We did *not* hold in *Montgomery*, however, that when, after a suit to foreclose right of redemption in property sold at tax sale has been filed, it is discovered that the tax sale in fact was void at its inception, TP section 14–848 necessarily applies and is the sole mechanism for declaring the tax sale void. As we have explained, TP section 14–848 by its plain language cannot cover a tax sale that is void at its inception. Its language contemplates a procedural or correctable error in the sale, not a sale that, for substantive reasons, never should have taken place to begin with.

In its memorandum below, Heartwood argued that a local government cannot contravene the Tax Sale Statute by enacting ordinances or rules that substantively or procedurally affect property tax sales in its jurisdiction. That is a legally

sound observation, *see Queen v. Agger,* 287 Md. 342, 346, 412 A.2d 733 (1980) (contracts which violate statutes will not be enforced) but is not dispositive of the issue here. The County's "Terms of the 2001 Tax Sale," which gave it the contractual right to declare a tax sale void, do not violate that principle when the ground for voiding the sale is that it was void at its inception because no taxes were owed. The Tax Sale Statute governs the procedures for tax sales and creates a mechanism by which title owners' rights of redemption in properties sold for taxes may be foreclosed. Here, Elkhorn did not have a right of redemption in the Property, as the taxes assessed against it from July 20, 1999, forward were assessed in error.

In the case at bar, as soon as the County was served, it filed a motion to dismiss the tax sale foreclosure action against it and Elkhorn, alleging that the SDAT erroneously assessed taxes on the Property and, in fact, when the Property was sold for taxes on June 6, 2001, no taxes were owed.[5] Those facts, which were undisputed, established that there was no basis for that sale of the Property and there was no right of redemption in the Property to foreclose. On those undisputed facts, the court should have dismissed Heartwood's action to foreclose right of redemption in the Property. The court should not have granted Heartwood's motion to declare tax sale void under TP section 14–848, as that statute does not apply when the tax sale at issue is void at its inception, because taxes mistakenly were assessed. Once the action was dismissed as it should have been, the County, through its collector, was

---

**5.** As explained above, TP section 14–842, entitled "Validity of taxes and sale presumed unless attacked in answer," provides that, in an action brought under the Tax Sale Statute, the validity of the procedure of the sale is "conclusively presumed unless a defendant in the proceeding shall, by answer, set up as a defense the invalidity of the taxes or the invalidity of the proceedings to see or the invalidity of the sale." Howard County was not served in this case until immediately before Heartwood filed its motion to declare tax sale void under TP section 14–848. Upon being served, it filed a motion to dismiss that alleged the undisputed fact that the SDAT had improperly assessed taxes against the Property when none were assessable. By raising that defense in its motion to dismiss, the County substantially complied with the requirements of TP section 14–842.

contractually entitled, under the "Terms of the 2001 Tax Sale," to declare the tax sale of the Property void, without payment of interest or expenses.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH INSTRUCTIONS TO GRANT HOWARD COUNTY'S MOTION TO DISMISS. COSTS TO BE PAID BY THE APPELLEE.**