18 A.3d 91

**Kareem GRANT**

v.

**Stacy G. KAHN, et al.**

**No. 886, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

April 27, 2011.

422

Matthew G. Summers (Robert A. Scott, Ballard, Spahr, Andrews & Ingersoll, LLP, on the brief), Baltimore, MD, for appellant.

David W. Hotes & David C. Merkin (McMillan Metro PC, on the brief), Rockville, MD, for appellee.

Panel: MEREDITH, WOODWARD, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

WOODWARD, J.

This appeal arises from the decision of the Circuit Court for Montgomery County to deny the motion filed by appellant, Kareem Grant, to release the judgment levy on his residential property located at 11355 King George Drive, Unit 11, Wheaton, Maryland ("the property"). Grant acquired the property from Jeffrey Ganz by means of a residential sales contract ("the contract"), which included, *inter alia*, a financing contingency provision. While the contract was pending, but before settlement occurred, appellees, Stacy G. Kahn and Steven Kahn ("the Kahns"), filed a Complaint for Confessed Judgment against Ganz, and the circuit court entered a Judgment by Confession against Ganz.[1] Without any knowledge of the

---

1.  Judgment was also entered against an entity called Delmarva Donuts, Inc. This fact is not relevant to the instant appeal.

confessed judgment, Grant completed the purchase of the property from Ganz several days later. Thereafter, the Kahns filed a Request for Writ of Execution by Levy on the property, which Grant then owned. Grant responded by filing a Motion to Release Property from Levy. After a hearing, the circuit court denied Grant's motion. This appeal followed.

Grant presents one question for our review, which we have slightly rephrased:

> Did the circuit court err in holding that, as a matter of law, equitable title to the property did not pass to Grant, as purchaser, under a contract of sale executed and delivered prior to the entry of the confessed judgment against Ganz, as seller, because a financing contingency in the contract had not been satisfied or removed on the date that the confessed judgment was entered?

Finding error, we shall reverse the judgment of the circuit court.[2]

## BACKGROUND

On May 29, 2007, Grant and Ganz entered into the contract whereby Grant agreed to purchase, and Ganz agreed to sell, the property for the sum of $320,000. A Montgomery County Jurisdictional Addendum to the contract contained, *inter alia,* the following provisions:

> 11. *Financing and Financing Application.*—THE PROVISIONS OF THIS PARAGRAPH SUPERCEDE THE FINANCING AND FINANCING APPLICATION AND COMMITMENT PARAGRAPHS OF THE MAR CONTRACT.
>
> \*       \*       \*
>
> D.  **Financing** . . .

---

2. We also deny appellees' motion to strike portions of appellant's reply brief and reply appendix, and we deny appellant's motion to strike portions of appellees' brief. Because we conclude that equitable conversion occurred at the time the contract was entered into, we need not address the arguments and documents pertinent to the parties' motions.

... This contract is contingent on Buyer obtaining approval for loan(s) to purchase the Property (The "Financing Contingency").

This contract is contingent until 9 p.m. *45* Days after Date of Ratification ("Financing Deadline") upon Buyer Delivering Notice to Seller on the Regional Form # 100 removing this Financing Contingency. Such notice ... **shall not** be accompanied by a letter from the lender ("Lender's Letter").

If Buyer fails to Deliver Regional Form # 100 by deadline, this contingency will continue, unless Seller at Seller's option gives notice to Buyer that this Contract will become void. If Seller Delivers such Notice this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice unless prior to that date and time:

a) Buyer Delivers to Seller Regional Form # 100 (if required); or

b) Buyer Delivers to Seller Regional Form # 100 and provides Seller with evidence of sufficient funds available to complete Settlement without obtaining financing.

Upon Delivery to Seller of either (a) or (b) above, this Contract will no longer be contingent on Buyer being approved for the Specified Financing and this Contract will remain in full force and effect.

Prior to satisfaction or removal of the Financing Contingency, if Buyer receives a written rejection for the Specified Financing and Delivers a copy of the written rejection to Seller, this Contract will become void.

Grant never provided Ganz with Regional Form # 100. Nevertheless, on July 31, 2007, Grant and Ganz closed on the sale of the property. Grant delivered the purchase money of $320,000, which came from a loan for the same amount that was approved on the day of closing. In exchange, Ganz delivered to Grant a deed to the property, which was subsequently duly recorded.

On July 20, 2007, less than two months after Grant and Ganz entered into the contract, and while the contract remained executory, the Kahns filed a Complaint for Confession of Judgment, which resulted in the circuit court entering a Judgment by Confession against Ganz on July 24, 2007, in the amount of $148,929.52, plus interest of $1,094.10 and attorney's fees of $22,339.43. On March 27, 2008, the Kahns filed a request for Writ of Execution by Levy pursuant to Maryland Rule 2–641, in which the Kahns requested that the circuit court issue a Writ of Execution directing the sheriff to levy upon the property.

On April 4, 2008, Grant filed a Motion to Release Property from Judgment Levy. The circuit court held a hearing on the motion on May 28, 2008, at the conclusion of which the court denied Grant's motion. This timely appeal followed.

## DISCUSSION

Grant argues that the doctrine of equitable conversion prevented the judgment against Ganz from attaching to the property. Specifically, Grant contends that, under the doctrine of equitable conversion, on May 29, 2007, when Grant and Ganz entered into the contract of sale, Grant became the equitable owner of the property and Ganz held only bare legal title. According to Grant, because a judgment creditor's lien cannot attach to bare legal title, the judgment against Ganz could not attach to the property after the execution of the contract of sale. Grant rejects the theory that the financing contingency in the contract of sale prevented the doctrine of equitable conversion from applying, because Grant could have waived the contingency and sought specific performance. Additionally, Grant contends that language in this Court's opinion in Chambers v. Cardinal, 177 Md.App. 418, 935 A.2d 502 (2007), which is contrary to his position, is merely dicta. Lastly, Grant submits that sound public policy supports a determination that equitable conversion occurred despite the financing contingency, because to hold otherwise would expose buyers who commonly rely on such contingencies to significant

risks "associated with the seller's creditworthiness or lack thereof."

The Kahns counter that the circuit court was correct in its determination that the doctrine of equitable conversion was not applicable under the circumstances of the instant case. According to the Kahns, "[t]he ability of a buyer to specifically enforce a contract for realty is the lynchpin upon which rests the determination of whether equitable conversion has occurred." The Kahns contend that Grant could not have obtained specific performance of the contract of sale, because "specific performance requires that all contingencies and conditions precedent be satisfied by the party demanding the same." Here, according to the Kahns, the financing contingency remained unsatisfied and unremoved at the time that the confessed judgment was entered against Ganz, and thus equitable conversion had not occurred to prevent the judgment from attaching to the property. The Kahns also assert that Grant could not waive the financing contingency, because such contingency benefitted both Ganz, as seller, and Grant, as buyer. Finally, the Kahns contend that sound public policy supports affirming the circuit court, because fault lies with the title company that failed to bring the title examination up-to-date prior to closing. The Kahns conclude that a contrary holding would allow judgment debtors to shelter property from liens by entering into nonbinding contracts of sale.

## Standard of Review

Where "[t]he material first-level facts are not in dispute" and "[t]he issue decided by the circuit court, and pursued . . . on appeal, is purely legal," we decide it de novo. *Howard Cnty. v. Heartwood 88, LLC,* 178 Md.App. 491, 496, 943 A.2d 22 (2008). In the instant appeal, the facts are not in dispute, and the issue on appeal is purely legal. We therefore decide the issue *de novo.*

We also note that "[t]he interpretation of a contract . . . is a question of law, subject to *de novo* review." *Clancy v.*

*King*, 405 Md. 541, 556–57, 954 A.2d 1092 (2008) (quotations omitted).

> Maryland adheres to the principle of the objective inter-pretation of contracts. The court gives effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean. Words are to be given their ordinary meaning. If the language of a contract is unambiguous, the court does not contemplate what the parties may have subjectively intended by certain terms at the time of formation. Rather, the court must presume that the parties meant what they expressed.

*Anderson Adventures, LLC v. Sam & Murphy, Inc.*, 176 Md.App. 164, 178, 932 A.2d 1186 (2007) (citations, quotations, and alterations omitted).

### Equitable Conversion

■ "Equitable conversion ... is a theoretical change of property from realty to personalty, or *vice versa*, in order that the intention of the parties, in the case of a contract of sale, or the directions of the testator, in the case of directions in a will, may be given effect." *Coe v. Hays*, 328 Md. 350, 358, 614 A.2d 576 (1992). "The doctrine of equitable conversion and, more particularly, by contract, is [ ] well-established in Maryland." *DeShields v. Broadwater*, 338 Md. 422, 437, 659 A.2d 300 (1995). Our courts have routinely cited *Thompson on Real Property's* treatment of the topic:

> The legal cliche, that equity treats that as being done which should be done, is the basis of the theory of equitable conversion. Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes owner of the land, the vendor of the purchase money.

11 *Thompson on Real Property* § 96.06(a) (David A. Thomas ed., 2002 & Supp.2008) (footnote omitted). *See DeShields*, 338 Md. at 437; *Coe*, 328 Md. at 358, 614 A.2d 576; *Himmighoefer v. Medallion Industr., Inc.*, 302 Md. 270, 278, 487 A.2d 282 (1985).

Speaking for the Court of Appeals in *Watson v. Watson*, 304 Md. 48, 61, 497 A.2d 794 (1985), Judge Lawrence Rodowsky wrote:

The doctrine of equitable conversion by contract rests on the maxim that equity considers as done that which ought to be done. **Hence, an equitable conversion will place equitable title in the purchaser only if the contract is one under which the vendor would be subject to a decree for specific performance.** As explained by Chief Judge Jeremiah Townley Chase for the Court in *Hampson v. Edelen*, [2 H. & J. 64, 66 (1807) ],

[a] contract for land, *bona fide* made for a valuable consideration, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time. When the money is paid according to the terms of the contract, the vendee is entitled to a conveyance, and to a decree in Chancery for a specific execution of the contract, if such conveyance is refused. [ ]

The commentators are in accord that equitable conversion by contract takes place only if the contract is specifically enforceable.

(Emphasis added).

Judge Rodowsky went on to discuss the legal effect of a judgment entered against a vendor after the contract has been made:

One result of the doctrine is that **a judgment entered against the vendor after the contract has been made does not become a lien on the realty.** A vendor's judgment creditor may not execute on the realty because the vendor, sometimes described as trustee for the purchaser, has a right to the balance of the purchase money but has no beneficial interest in the property. Equitable title is superior to a later judgment lien.

*Watson*, 304 Md. at 60, 497 A.2d 794 (emphasis added); *accord, Caltrider v. Caples*, 160 Md. 392, 396, 153 A. 445 (1931) (stating that " '[a] judgment obtained by a third person

against the vendor, mesne the making [of] the contract and the payment of the money, cannot defeat or impair the equitable interest thus acquired, nor is it a lien on the land to affect the right of such *cestui que trust.*' " (quoting *Hampson*, 2 H. & J. at 66)).

In *Himmighoefer*, the Court of Appeals elaborated on this aspect of the doctrine:

> It is a general rule that **the holder of an equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining judgment subsequent to the execution of the contract.** ... The effect of such a contract is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor pending the fulfillment of the contract and the formal conveyance of the estate. **The right of the vendee to have the title conveyed upon full compliance with the contract of purchase is not impaired by the fact that the vendor, subsequently to the execution of the contract, incurred a debt upon which judgment was recovered.** A judgment creditor stands in the place of his debtor, and he can only take the property of his debtor subject to the equitable charges to which it is liable in the hands of the debtor at the time of the rendition of the judgment.

302 Md. at 279, 487 A.2d 282 (emphasis added) (citations and quotations omitted) (quoting *Stebbins–Anderson Co. v. Bolton*, 208 Md. 183, 187–88, 117 A.2d 908 (1955)).

▮▮▮▮ "[I]t is elementary that either party to a contract may waive any of the provisions made for his benefit." *Twining v. Nat'l Mortg. Corp.*, 268 Md. 549, 555, 302 A.2d 604 (1973). " '[A]lthough a party may waive a provision included in a contract for that party's sole benefit, a party cannot waive a contractual requirement that benefits both sides to the transaction.' " *Cattail Assoc., Inc. v. Sass*, 170 Md.App. 474, 500, 907 A.2d 828 (2006) (quoting *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F.Supp.2d 510, 520 (S.D.N.Y.2005)). "Ac-

cordingly, the application of the doctrine of waiver when one party seeks to enforce a contract ... ordinarily requires a determination whether the condition was inserted in the contract solely for the benefit of the party seeking to enforce the contract despite its nonoccurrence." *Id.* (quoting 25 Samuel Williston, *A Treatise on the Law of Contracts* § 39:24 (Richard A. Lord ed., 4th ed.1992, Supp.2006)).

## Analysis

■ In the instant case, there is no question that the parties entered into a valid contract for Grant to purchase the property from Ganz and that the judgment lien against Ganz was entered after the execution of the contract but before settlement thereon. The central issue is whether the financing contingency in the contract of sale prevented equitable conversion from occurring at the time that the contract was made. Specifically, we need to decide whether the financing contingency prevented specific enforcement of the contract by Grant, which thereby would have precluded equitable conversion. *See Watson*, 304 Md. at 61, 497 A.2d 794 (stating that "[t]he commentators are in accord that equitable conversion takes place only if the contract is specifically enforceable.").[3]

Our review of the financing contingency in the contract indicates that it unquestionably benefitted Grant by making the contract contingent on his ability to secure the necessary financing. On the other hand, the financing contingency gave Ganz only the power, after the initial 45 day period, to impose a time limit for Grant to either remove the contingency or let the contract terminate, without liability. Therefore, the financing contingency benefitted only Grant, and because Grant

---

**3.** Although not raised by Grant, the Court of Appeals in *Caltrider v. Caples*, 160 Md. 392, 397–98, 153 A. 445 (1931), rejected the judgment creditor's argument that the contract of sale was not specifically enforceable, holding that the judgment creditor had no standing to raise that argument. The Court reasoned that the judgment creditor acquired no more rights than those retained by the vendor/judgment debtor, and the vendor had obviated the necessity of deciding the question of specific performance by carrying out the agreement. *Id.*

could waive the contingency at any time, the contract was specifically enforceable by Grant.

In addition, according to the financing contingency, from May 29, 2007 to July 13, 2007 (the 45 day period following the date of the contract ratification), the contract was "contingent on [Grant] obtaining approval for [a] loan[ ] to purchase the [p]roperty." Grant did not exercise that option, and the contract was not terminated by him. After 9 p.m. on July 13, 2007 (the "deadline" for providing Ganz notice by Form # 100 removing the financing contingency), the contingency, by its express terms, continued unless it was satisfied. After passage of the deadline, Ganz had the option to give notice to Grant that the contract would become void if Grant failed to deliver Form # 100 within three days. Ganz did not exercise this option, and the contract continued to be in effect.

Instead, on July 31, 2007, Grant and Ganz met for settlement on the property, and Grant tendered the full amount of the purchase price. At that time Ganz had no option or discretion under the contract not to convey the property to Grant. Thus, if Ganz had refused such conveyance, specific performance of the contract was available to Grant. *See Watson,* 304 Md. at 61, 497 A.2d 794 (stating that "[w]hen the money is paid according to the terms of the contract, the vendee is entitled to a conveyance, and to a decree in Chancery for a specific execution of the contract, if such conveyance is refused.").

We conclude that the financing contingency consisted of conditions subsequent. Neither party took advantage of the conditions permitting termination of the contract, so that the contract continued in effect. Therefore, the financing contingency did not prevent the occurrence of equitable conversion at the time of the execution of the contract. Accordingly, on July 24, 2007, when the circuit court entered a confessed judgment against Ganz, equitable title to the property was held by Grant, and the judgment could not attach as a lien on the property. Grant's claim of equitable title was superior to

that of the Kahns as judgment creditors. The circuit court erred in coming to a contrary conclusion.

### Chambers v. Cardinal

The Kahns place great reliance on this Court's opinion in *Chambers v. Cardinal.* That reliance is misplaced.

In *Chambers,* the appellant and Richard Chambers were divorced on April 17, 2003. 177 Md.App. at 422, 935 A.2d 502. On August 18, 2003, the appellant obtained a judgment against Chambers in the amount of $21,950. *Id.* By that time, Chambers had remarried and owned a parcel of real property with his new wife, as joint tenants. *Id.* Thereafter, on October 17, 2004, the Chamberses entered into a contract to sell said property to the appellees and on February 8, 2005, conveyed said property by deed to the appellees. *Id.* As of February 8, 2005, the appellant had not attempted to execute on her judgment. *Id.* Subsequently, the appellant filed suit seeking a declaratory judgment that she had an enforceable judgment lien on the appellees' property. *Id.*

This Court first observed that a joint tenancy could be terminated in a variety of ways, one of which was "when a creditor obtains a judgment against one of the joint tenants *and* levies upon the property in execution on the judgment." *Id.* at 425, 935 A.2d 502. It was undisputed in *Chambers* that the appellant did not execute on her judgment until long after the property had been conveyed to the appellees. *Id.*

The appellant thus had to find a severance of the joint tenancy prior to the conveyance of the property in order for her judgment lien to attach to the Chamberses' interest. *Id.* at 432, 935 A.2d 502. The appellant argued that the contract of sale of the property to the appellees terminated the joint tenancy of Chambers and his wife. *Id.* We disagreed, because under the doctrine of equitable conversion, the contract of sale vested equitable ownership of the property in the appellees, leaving only bare legal title in the Chamberses, and "a judgment creditor of a debtor holding bare legal title to property cannot attach the equitable interest in the property, as it is

vested in another." *Id.* at 433–34, 935 A.2d 502 (quotations omitted). We thus concluded that, "regardless of the effect of the contract of sale on the joint tenancy, the contract divested [ ] Chambers of any interest in the Property to which appellant's lien could attach." *Id.* at 432, 935 A.2d 502.

In the course of our discussion of equitable conversion, we included the following footnote:

As we have already observed, ... the contract between Chambers and appellees is not before us. To the extent that the contract contained any contingencies, equitable title would not have changed hands, and the joint tenancy could not have terminated, if at all, until those contingencies were fulfilled. In *Alexander* [ *v. Boyer*, 253 Md. 511, 521, 253 A.2d 359 (1969) ], "until the conditions precedent were met," the contract did not "impair any of the four unities and would not result in a severance or termination of the joint tenancy." [ ] It is not necessary to consider whether the contract in this case contained any contingencies, however, because appellant did not move to enforce her judgment until after the Property had been deeded to appellees.

*Id.* at 433 n. 7, 935 A.2d 502.

Simply stated, these comments are *dicta*. We did not have the contract before us in *Chambers* in order to determine whether there were any contingencies that would have prevented the contract from being specifically enforced. Moreover, there is no rule providing that the existence of *any* contingency acts to prevent equitable conversion. Therefore, *Chambers* does not control the outcome of the instant appeal.

### Public Policy

■ Finally, Grant claims that "sound public policy" dictates that the decision of the circuit court be reversed. Grant reasons that the trial court's decision "endangers the free transferability of residential real property" by exposing buyers to significant risks associated with sellers who have "poor credit histories or financial difficulties." The Kahns counter that a reversal of the circuit court's decision "would implicitly

allow judgment debtors to remove their real estate assets from the grasp of their judgment creditors by entering into non-binding contracts of sale which can be unilaterally nullified by their putative purchasers simply by giving notice." We agree with Grant.

Under the Kahns' theory, a buyer entering into a contract of sale with a financing contingency would be exposed to the risk of judgment liens entered against the seller after the execution of the contract. These liens could affect the sale itself where, for example, the total of all liens or encumbrances on the property exceed the purchase price, and the judgment creditor challenges the sufficiency of the purchase price. Such uncertainty, in our view, would adversely affect the free transferability of real property. The Kahns' concern over a debtor using a pretextual sale to avoid the anticipated lien of a judgment creditor is addressed by the doctrine of equitable conversion. Equitable conversion requires a "contract for land, *bona fide* made for a valuable consideration." *Watson,* 304 Md. at 61, 497 A.2d 794; *see Birckner v. Tilch,* 179 Md. 314, 323, 18 A.2d 222 (stating that "[i]n order to work a conversion, the contract must be valid and binding"), *cert. denied,* 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 509 (1941). Therefore, we conclude that sound public policy supports the application of the doctrine of equitable conversion to the case *sub judice.*

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**