******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SOUTHPORT CONGREGATIONAL CHURCH–UNITED
CHURCH OF CHRIST *v.* BETTY ANN HADLEY,
COEXECUTOR (ESTATE OF ALBERT L.
HADLEY), ET AL.
(SC 19398)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued October 15, 2015—officially released January 5, 2016*

*Daniel J. Krisch*, with whom was *Jeffrey F. Gostyla*, for the appellant (intervening defendant Cheekwood Botanical Garden and Museum of Art).

*John A. Farnsworth*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The principal issue in this certified appeal is whether title to real property passed to a buyer at the signing of a contract of sale under the doctrine of equitable conversion, when the seller died prior to the fulfillment or expiration of a mortgage contingency clause in the contract. The decedent in the present case, Albert L. Hadley, entered into a contract for the sale of a certain parcel of real property to Evelyn Winn. Before entering into the contract, the decedent had specifically devised the property to the plaintiff, Southport Congregational Church–United Church of Christ (church), in his will. The defendant Cheekwood Botanical Garden and Museum of Art (Cheekwood) claims entitlement to the proceeds from the sale of the property to Winn by the coexecutors of the decedent's estate, the defendants Betty Ann Hadley and Lee Snow, as a result of a charitable pledge made by the decedent prior to his death.[1] Cheekwood appeals, upon our grant of its petition for certification,[2] from the judgment of the Appellate Court reversing a judgment of the trial court, which had held that title to the property passed to Winn under the doctrine of equitable conversion at the signing of the contract. *Southport Congregational Church–United Church of Christ* v. *Hadley*, 152 Conn. App. 282, 298–300, 98 A.3d 99 (2014). On appeal, Cheekwood claims that the Appellate Court improperly concluded that equitable conversion did not apply because the contract was fully enforceable against the decedent at signing and could be terminated only by Winn within a specified period if she could not obtain financing. We agree and, accordingly, reverse in part the judgment of the Appellate Court.[3]

The record reveals the following facts and procedural history. On September 22, 2010, the decedent executed a will specifically devising the property, which is located at 504 Pequot Avenue in Southport, to the church. One and one-half years later, on March 21, 2012, the decedent contracted to sell the property to Winn. The sales contract, which was the standard form real estate contract provided by the Fairfield County Bar Association,[4] contained a mortgage contingency clause stating: "This [a]greement is contingent upon BUYER obtaining a written commitment for a loan . . . . [If] BUYER is unable to obtain a written commitment for such a loan . . . and if BUYER so notifies SELLER or SELLER'S attorney, in writing, at or before 5:00 p.m., on April 16, 2012, then this [a]greement shall be null and void . . . . If SELLER or SELLER's attorney does not receive such written notice . . . this [a]greement shall remain in full force and effect." The decedent waived specific performance as a remedy under the contract and agreed to retain Winn's down payment as liquidated damages in the event of Winn's default.[5] By letter to Cheekwood's president dated March 6, 2012,

the decedent pledged to donate the proceeds from the sale to Cheekwood.[6] The decedent died on March 30, 2012, nine days after signing the contract and before Winn had obtained financing or the mortgage contingency period had expired.

The decedent's will was admitted to probate in New York Surrogate's Court on May 10, 2012.[7] The coexecutors applied for ancillary jurisdiction and authorization to sell the property pursuant to General Statutes § 45a-325[8] in the Probate Court for the district of Fairfield. Cheekwood filed a claim to the proceeds from the sale. The Probate Court granted the coexecutors' application for ancillary jurisdiction and for authorization to sell the property.[9]

The church appealed from the decision of the Probate Court to the trial court, claiming that, because it was the specific devisee of the property under the decedent's will, the coexecutors could not sell the property without its consent pursuant to General Statutes § 45a-428 (b).[10] The coexecutors responded to the probate appeal with an answer, special defense, and counterclaim seeking authorization to sell the property. The court granted Cheekwood's motion to intervene. During the pendency of this appeal, the Probate Court amended its decree to require the coexecutors to obtain the church's consent before selling the property. The church subsequently withdrew its probate appeal in light of this amendment. The coexecutors' counterclaim, however, remained pending.

The coexecutors then filed a second action in the trial court, in which they filed a separate application seeking authorization to sell the property pursuant to § 45a-325. Cheekwood again intervened and submitted a memorandum of law in support of the coexecutors' application, contending that § 45a-428 did not apply because the decedent's interest in the property terminated at the signing of the contract under the doctrine of equitable conversion, leaving him with only an interest in the expected proceeds from the sale at the time of his death. In response, the church asserted that equitable conversion did not apply because of the unfulfilled and unexpired mortgage contingency clause, and thus, the decedent retained his interest in the property at the execution of the contract, which passed to the church. See *Zanoni* v. *Lynch*, 79 Conn. App. 309, 320, 830 A.2d 304 ("title to real estate vests immediately . . . in a deceased's . . . devisees upon the admission of a will to probate" [internal quotation marks omitted]), cert. denied, 266 Conn. 929, 837 A.2d 804 (2003). After an evidentiary hearing, the trial court granted the coexecutors' application for authorization to sell the property. The court then denied the church's motion to reargue, and the church appealed from that judgment to the Appellate Court under Docket No. AC 35289

With this appeal pending, Cheekwood moved for

summary judgment on the coexecutors' counterclaim in the probate appeal. Cheekwood contended that the relief sought was identical to that which had already been granted by the trial court and, thus, judgment should be rendered in favor of the coexecutors. The church opposed the motion, claiming, inter alia, that the counterclaim had been rendered moot by the granting of the coexecutors' separate application for authorization to sell the property in the second action. The trial court rejected these arguments and granted Cheekwood's motion for summary judgment. The trial court denied the church's motion to reargue, and the church appealed from that judgment to the Appellate Court under Docket No. AC 36395.

The Appellate Court resolved the church's appeals together, because the central issue in both appeals—whether title passed to the buyer at the signing of the contract of sale via equitable conversion—was identical. *Southport Congregational Church–United Church of Christ* v. *Hadley*, supra, 152 Conn. App. 291–92. The church argued that equitable conversion did not apply because the unfulfilled and unexpired mortgage contingency clause prevented title from passing to Winn at the signing of the contract. Id., 296–97. The coexecutors and Cheekwood maintained in response that equitable conversion occurred because the contract was specifically enforceable against the seller at the time of its execution. Id., 297. The Appellate Court agreed with the church that equitable conversion did not apply because of the unfulfilled and unexpired mortgage contingency clause. Id. The Appellate Court ultimately rendered judgment reversing the trial court's judgments, and remanded the cases to the trial court with direction to deny the coexecutors' separate application to sell the property, and to dismiss their counterclaim in the probate appeal seeking the same relief as moot. Id., 300. This certified appeal followed.[11]

On appeal, Cheekwood contends that the mortgage contingency clause did not preclude the equitable conversion of title because the parties intended for the contract to be fully enforceable at signing, subject only to the possible termination within a specified period by Winn if she could not obtain financing. In response, the church argues that the clause was an unsatisfied condition precedent to the contract and, thus, the contract was not yet enforceable and title could not have passed to Winn. We agree with Cheekwood that the mortgage contingency clause did not preclude the application of equitable conversion, and that equitable title passed to Winn at the execution of the contract.

We begin by setting forth our standard of review. "The determination of whether an equitable doctrine applies in a particular case is a question of law subject to plenary review." *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 588, 57 A.3d 730 (2012). We simi-

larly review the intent of the parties to an unambiguous contract de novo. See, e.g., *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 811, 17 A.3d 40 (2011).

"[E]quitable conversion is a settled principle under which a contract for the sale of land vests equitable title in the [buyer]." (Internal quotation marks omitted.) *Salce* v. *Wolczek*, 314 Conn. 675, 687, 104 A.3d 694 (2014). "Under the doctrine of equitable conversion . . . the purchaser of land under an executory contract is regarded as the owner, subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser. . . . The vendor's interest thereafter in equity is in the unpaid purchase price, and is treated as personalty . . . while the purchaser's interest is in the land and is treated as realty." (Internal quotation marks omitted.) Id., 688. The doctrine is "rooted in the principle that equity views a transaction as being completed at the time the parties enter into the transaction, irrespective of whether a formal exchange of legal title has taken place." Id.

"The foundation for the doctrine of equitable conversion is [the] presumed intention of the owner, equity regarding as done that which ought to be done." (Internal quotation marks omitted.) *United States* v. *O'Dell*, 247 F.3d 655, 684 (6th Cir. 2001). The doctrine was "adopted for the purpose of carrying into effect, in spite of legal obstacles, the supposed intent of a testator or settlor." (Internal quotation marks omitted.) *Connelly* v. *Federal National Mortgage Assn.*, 251 F. Supp. 2d 1071, 1074 n.3 (D. Conn. 2003). Equitable conversion "is not a fixed rule of law, but proceeds on equitable principles that take into account the result to be accomplished. 27A Am. Jur. 2d Equitable Conversion § 1 [1996]." (Internal quotation marks omitted.) *United States* v. *74.05 Acres of Land*, 428 F. Supp. 2d 57, 62 (D. Conn. 2006).

Despite this apparent flexibility, the contract must be enforceable for equitable conversion to apply; otherwise, it cannot be said that the parties intended for title to pass to the buyer at execution. See *Francini* v. *Farmington*, 557 F. Supp. 151, 155 (D. Conn. 1982); *Hadgkiss* v. *Bowe*, 21 Conn. App. 619, 620, 574 A.2d 1303 (1990). "The basis of [equitable conversion] is the existence of a duty . . . ." *Anderson* v. *Yaworski*, 120 Conn. 390, 393, 181 A. 205 (1935). "[T]here must, in fact, be a clear duty on the part of the seller to convey the property, a duty enforceable by an action for specific performance." *Noor* v. *Centreville Bank*, 193 Md. App. 160, 167, 996 A.2d 928, cert. granted, 415 Md. 607, 4 A.3d 512 (2010), appeal dismissed, 417 Md. 500, 10 A.3d 1180 (2011); see also *In re Walston*, 190 B.R. 855, 859 (Bankr. S.D. Ill. 1996). The doctrine is "firmly linked to the specific enforceability of the contract." (Internal quotation marks omitted.) *Benedict* v. *United States*, 881 F. Supp. 1532, 1548 (D. Utah 1995); see also *Steele*

v. *Rosenfeld, LLC*, 936 So. 2d 488, 493 (Ala. 2005); *Parr-Richmond Industrial Corp.* v. *Boyd*, 43 Cal. 2d 157, 168, 272 P.2d 16 (1954); *O'Brien* v. *Paulsen*, 186 N.W. 440, 442 (Iowa 1922); *Horton* v. *Horton*, 2 N.J. Super. 155, 159–60, 62 A.2d 503 (Ch. 1948).

In accordance with this principle, the doctrine of equitable conversion does not apply when the seller's duty to convey title is subject to a condition precedent.[12] See *In the Matter of Lefkas General Partners*, 112 F.3d 896, 901 (7th Cir. 1997); *In re Walston*, supra, 190 B.R. 859; *Noor* v. *Centreville Bank*, supra, 193 Md. App. 167–68. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951). When the seller's duty to convey title is conditional, and does not arise at execution, the buyer cannot immediately enforce the contract. See id. Under such circumstances, it cannot be said that the parties intended for title to pass to the buyer at signing. See *Parker* v. *Averett*, 114 Ga. App. 401, 402, 151 S.E.2d 475 (1966); *Noor* v. *Centreville Bank*, supra, 167–68. "[E]quity can hardly regard that as presently done which the parties . . . have agreed shall be done only in the future." *Anderson* v. *Yaworski*, supra, 120 Conn. 393.

For example, in *Francini* v. *Farmington*, supra, 557 F. Supp. 155, the United States District Court for the District of Connecticut held that equitable conversion did not apply when the contract was conditioned on a town's approval of the buyer's application to subdivide the lot.[13] Title would have passed to the buyer "only upon performance of specific conditions," and thus, the buyer's interest in the property "never amounted to more than an expectation . . . ." (Citation omitted.) Id. Similarly, in *Rockland-Rockport Lime Co.* v. *Leary*, 203 N.Y. 469, 479–80, 97 N.E. 43 (1911), the Court of Appeals of New York held that title did not pass to the buyer at the signing of a lease when the buyer had not yet exercised his option to purchase the property. Because the seller had no duty to convey title until the buyer exercised the option, equitable conversion did not apply at signing. Id., 480.

If, however, the duty under the contract arises immediately at execution, subject to a condition subsequent, equitable conversion may apply. See *Salce* v. *Wolczek*, supra, 314 Conn. 689 n.6 ("preconditions in a sales contract *can* delay the transfer of equitable interest until those conditions are met" [emphasis added]). A condition subsequent creates a situation in which "an existing right is cut off by the nonperformance of the condition . . . ." *Bulkley* v. *Norwich & Westerly Railway Co.*, 81 Conn. 284, 287, 70 A. 1021 (1908). Conditions subsequent do not delay the seller's duty to convey title. See *Grant* v. *Kahn*, 198 Md. App. 421, 431–34, 18 A.3d 91 (2011). Because the contract takes full force and effect at execution, and the buyer immediately gains the right

to enforce the contract against the seller, nothing prevents title from passing to the buyer at signing. See id.

For instance, in *Grant* v. *Kahn*, supra, 198 Md. App. 432, the Maryland Court of Special Appeals held that a mortgage contingency "consist[ing] of conditions subsequent" did not prevent title from passing to the buyer at execution of a contract.[14] The court noted that: (1) the buyer could specifically enforce the contract against the seller; (2) the contingency benefited the buyer, who could remove it at any time; and (3) the seller had no discretion not to convey the property at closing. Id., 431–32. "Neither party took advantage of the conditions permitting termination of the contract, so . . . the contract continued in effect." Id. The court added, "there is no rule providing that the existence of *any* contingency acts to prevent equitable conversion." (Emphasis in original.) Id., 434.

The Texas Court of Appeals similarly held in *Parson* v. *Wolfe*, 676 S.W.2d 689, 692 (Tex. App. 1984), that equitable conversion applied despite a mortgage contingency clause when the seller died prior to closing.[15] The court rejected the notion that the clause was a condition precedent to the contract, noting that the clause was "intended as a measure of the time that was reasonable for the buyer's performance, and not as a condition that, if unfulfilled, would bar specific performance." Id.

Thus, the relevant inquiry in the present case is whether the parties intended for the mortgage contingency clause to be a condition precedent to the decedent's duty to convey title. The proper interpretation of the clause requires us to determine the intent of the parties. *Kakalik* v. *Bernardo*, 184 Conn. 386, 393, 439 A.2d 1016 (1981). "The meaning properly to be ascribed to [a] mortgage commitment clause [is] . . . to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto." Id. Like other contracts, though, the meaning of unambiguous language in a mortgage contingency clause is determined as a matter of law. See, e.g., *FCM Group, Inc.* v. *Miller*, supra, 300 Conn. 811.

We conclude that the parties did not intend for the mortgage contingency clause to be a condition precedent to the decedent's duty to convey title. The unambiguous language of the clause states: "This [a]greement is contingent upon BUYER obtaining a written commitment for a loan . . . . [If] BUYER is unable to obtain a written commitment for such a loan . . . and if BUYER so notifies SELLER or SELLER'S attorney, in writing, at or before 5:00 p.m., on April 16, 2012, then this [a]greement shall be null and void . . . . If SELLER or SELLER's attorney does not receive such written notice . . . this [a]greement shall remain in full force and effect." This language plainly and unambiguously denotes the parties' intention for the sale to pro-

ceed as planned unless Winn notified the decedent that she could not obtain financing within twenty-one days.

Two phrases in the mortgage contingency clause, in particular, support this conclusion. First, the clause states that if Winn did not notify the decedent of her inability to obtain financing within twenty-one days, the contract would "*remain* in full force and effect." (Emphasis added.) If the contract was not already in effect, the use of the word "remain" would be inappropriate. Second, if Winn notifies the decedent that she is unable to obtain financing, the contract "shall be null and void . . . ." There would be no need to "void" or "nullify" anything if the contractual duty had not yet arisen. Although the contract was "contingent upon BUYER obtaining a written commitment for a loan," read in complete context, this clause limits only *Winn's* duty to purchase the property, rather than the contract in general.

We have previously interpreted several mortgage contingency clauses and determined them to be conditions precedent to the contract, but none of those cases involved a possible application of equitable conversion, and they do not control the present case. See *Loda* v. *H. K. Sargeant & Associates, Inc.*, 188 Conn. 69, 77–78, 448 A.2d 812 (1982); *Luttinger* v. *Rosen*, 164 Conn. 45, 47–48, 316 A.2d 757 (1972).[16] The mortgage contingency clauses in those cases were conditions precedent only to the *buyer's* duty to purchase the property. See *Loda* v. *H. K. Sargeant & Associates, Inc.*, supra, 77–78 (clause providing that sale of home would not occur unless buyers obtained mortgage commitment no later than specified date was condition precedent to contract; clause was imposed "for the protection and benefit of the [buyers]," such that *buyers* could waive the clause);[17] *Luttinger* v. *Rosen*, supra, 48 (clause allowing buyers to terminate contract within specified time if they could not obtain financing was condition precedent to contract; *buyers* entitled to refund of their deposit when they could not obtain financing);[18] see also *Dodson* v. *Nink*, 72 Ill. App. 3d 59, 65–66, 390 N.E.2d 546 (1979) (buyer's ability to sell own home within ninety days was condition precedent to *buyer's* duty to purchase home; contract unenforceable against buyer when sale of her home fell through). In the context of equitable conversion, the crux of our inquiry is whether the *seller's* duty to convey title was contingent, since equitable conversion, at its core, depends on whether title passed to the buyer at signing. We did not decide in our previous cases whether the *seller's* duty to convey title was conditional.[19]

The present case more closely resembles *Grant* and *Parson*, in which the Maryland and Texas courts squarely addressed the effect of a mortgage contingency clause on the application of equitable conversion. See *Grant* v. *Kahn*, supra, 198 Md. App. 431–34; *Parson* v.

*Wolfe*, supra, 676 S.W.2d 692. As in those cases, the mortgage contingency clause in this case benefited the buyer, who could waive it at any time and specifically enforce the contract against the seller. See *Grant* v. *Kahn*, supra, 431–34; *Parson* v. *Wolfe*, supra, 692. The facts of this case are similar to those in *Parson*, in which the seller died prior to closing, and the court held that the parties did not intend for the clause to delay the seller's duty to convey title. *Parson* v. *Wolfe*, supra, 692. The mortgage contingency clause is also similar to that in *Grant*, wherein the buyer could terminate the contract if he could not obtain financing within a specified period. See *Grant* v. *Kahn*, supra, 431–32. Although the clause in the present case differs slightly from that in *Grant*, those differences *more strongly* evidence the parties' intent for title to pass to Winn at signing. The contingency period in *Grant* continued indefinitely in the absence of action by the parties. Id. In contrast, the contingency period in this case expired within twenty-one days, after which the contract "remain[ed] in full force and effect." Additionally, in *Grant*, the seller could terminate the contract upon notice to the buyer, which voided the contract in three days unless the buyer removed the contingency. *Grant* v. *Kahn*, supra, 432. In the present case, the decedent never had any discretion not to proceed with the sale.[20]

The church points to another clause in the contract—the decedent's waiver of specific performance—in arguing that equitable conversion should not apply in this case.[21] The church contends that equitable conversion cannot apply unless the contract is specifically enforceable against both parties. We disagree. As discussed previously, the key inquiry in an equitable conversion analysis is whether the contract is specifically enforceable against the *seller*. See *Noor* v. *Centreville Bank*, supra, 193 Md. App. 167–68 ("[T]here must, in fact, be a clear duty *on the part of the seller* to convey the property, a duty enforceable by an action for specific performance. . . . If there is some condition or contingency *to the seller's duty to convey* . . . equitable conversion would not take effect until [the] condition or contingency is resolved . . . ." [Citation omitted; emphasis added.]); see also *Watson* v. *Watson*, 304 Md. 48, 61, 497 A.2d 794 (1985) ("an equitable conversion will place equitable title in the purchaser only if the contract is one under which the *vendor* would be subject to a decree for specific performance" [emphasis added]); *Butler* v. *Wilkinson*, 740 P.2d 1244, 1255 (Utah 1987) ("[t]he doctrine gives a *vendee* the right to obtain a decree of specific performance from a court of equity" [emphasis added]).[22] In the present case, Winn expressly retained the ability to specifically enforce the contract against the decedent.[23] Indeed, the Texas Court of Appeals rejected a nearly identical argument in *Parson*, reasoning that because the seller agreed to accept liquidated damages in lieu of specific performance or tradi-

tional damages in the event of the buyer's default, the seller had a remedy under the contract, and the contract was therefore enforceable against both parties. *Parson* v. *Wolfe*, supra, 676 S.W.2d 692. As we concluded previously in this opinion, Winn's ability to secure a mortgage was not a condition precedent to the contract, and the parties intended for the contract to be fully enforceable against both parties at signing.[24] The decedent's waiver of specific performance actually *supports* this notion; if the contract was not immediately enforceable, there would be no need for a clause protecting Winn from having to proceed with the sale in the event she could not obtain financing.

Finally, looking more broadly to the parties' intent, the decedent's goal to redirect his bequest from the church to Cheekwood is evident.[25] In deciding whether to apply equitable conversion, we must give due consideration to the " 'presumed intention of the owner' "; *United States* v. *O'Dell*, supra, 247 F.3d 684; and "the result to be accomplished." (Internal quotation marks omitted.) *United States* v. *74.05 Acres of Land*, supra, 428 F. Supp. 2d 62. The decedent's letter to the president of Cheekwood stated: "I hereby wish to memorialize and confirm my pledge to donate the proceeds from the sale of my . . . house . . . to . . . Cheekwood . . . . [I]f I have not given such proceeds to Cheekwood during my lifetime, my estate shall be obligated to give such proceeds to Cheekwood. . . . I understand that Cheekwood is relying on this pledge and, accordingly, I intend this pledge to be enforceable against and binding upon my estate, any provisions in my [w]ill to the contrary notwithstanding." Betty Ann Hadley also attested to the decedent's intent to redirect his bequest from the church to Cheekwood. Her affidavit states that the decedent "declared that he was redirecting the gift in his [w]ill from [the church] to Cheekwood." The affidavit continues to state the following: "He discussed this bequest many times over the weeks prior to signing it and he had several conversations with his attorney . . . about this change in his original will. It was his clear intention that the proceeds from the . . . home be given to Cheekwood as he had already been very generous to the [church] and he stated in my presence that he intended to give this gift to [Cheekwood] instead of the [church]."[26] Because the core of the doctrine of equitable conversion is the parties' intent, these statements further support the application of equitable conversion to this case. See *Connelly* v. *Federal National Mortgage Assn.*, supra, 251 F. Supp. 2d 1074 n.3.

Overall, courts have "wide discretion and broad equitable power" to effectuate the intent of the parties via equitable conversion. (Internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 362, 880 A.2d 872 (2005); see *Parson* v. *Wolfe*, supra, 676 S.W.2d 691 ("the doctrine is used to carry out the intent of the testator who directs that certain realty be sold or purchased").

"[E]quitable remedies are not bound by a formula but are molded to the needs of justice." (Internal quotation marks omitted.) *Stratford* v. *Wilson*, 151 Conn. App. 39, 47, 94 A.3d 644, cert. denied, 314 Conn. 911, 100 A.3d 403 (2014). "Flexibility rather than rigidity has distinguished [them]." (Internal quotation marks omitted.) *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982). We must "be ever diligent to grant relief against inequitable conduct." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 459, 970 A.2d 592 (2009); see also *Holland* v. *Florida*, 560 U.S. 631, 649–50, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).

The decedent in the present case "took every step necessary" on his part to effect a sale of the property to Winn. *Kelley* v. *Neilson*, 433 Mass. 706, 714–15, 745 N.E.2d 952 (2001). Moreover, his intent to sell the property and benefit Cheekwood is evident from the record, despite the fact that he died before the mortgage contingency period in the contract had expired or been waived by Winn.[27] Equitable conversion nonetheless occurred, and this fact should not prevent the sale from closing as the parties intended.

The judgment of the Appellate Court is reversed only with respect to AC 35289 and the case is remanded to the Appellate Court with direction to affirm the judgment of the trial court granting the coexecutors' application for authorization to sell the property.

In this opinion the other justices concurred.

[1] To avoid confusion between the defendants, we refer to Betty Ann Hadley and Lee Snow collectively as coexecutors. For the sake of simplicity, we refer to all the defendants individually by name.

[2] We granted Cheekwood's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly reverse the trial court's judgment that the subject real property did not automatically pass to the specific devisee of the property under a will upon the death of the decedent when, prior to the decedent's death, he had entered into a contract to sell the property to a third party?" *Southport Congregational Church–United Church of Christ* v. *Hadley*, 314 Conn. 933, 102 A.3d 84 (2014).

[3] Shortly before the publication of this opinion, the church moved to dismiss the appeal as moot, claiming that Winn was no longer willing to purchase the property in accordance with the terms of the contract. According to the church, the parties had reached a settlement by which Winn would purchase the property at a lower price, and the church, Cheekwood, and the decedent's estate would all share in the proceeds. Cheekwood opposed the motion, however, arguing that the appeal was not moot because the settlement had not yet been consummated, and Winn had agreed to proceed with the sale in accordance with the contract, albeit at a lower price. We agreed with Cheekwood and denied the church's motion. See *Heyse* v. *Case*, 114 Conn. App. 640, 644, 971 A.2d 699 ("[t]here is no such thing as anticipatory mootness"), cert. denied, 293 Conn. 905, 976 A.2d 705 (2009).

[4] We note that the sales contract in the present case refers to the decedent as the seller and to Winn as the buyer. For the sake of simplicity, quotations within this opinion to the various provisions of this contract retain these designations.

[5] The contract states: "[If] BUYER is unable or unwilling to perform . . . SELLER's sole and exclusive remedy shall be the right to terminate this [a]greement by written notice to BUYER . . . and retain the down payment as reasonable liquidated damages . . . ."

[6] The plaintiff disputes Cheekwoods entitlement to the proceeds of the

sale. This issue is not, however, part of the certified question. See *Southport Congregational Church–United Church of Christ* v. *Hadley*, 314 Conn. 933, 102 A.3d 84 (2014). Accordingly, we decline to address it.

[7] The decedent was a resident of the state of New York at the time of his death.

[8] General Statutes § 45a-325 provides: "The court . . . may . . . authorize the fiduciary of the estate to convey the title of the deceased in any real property to any person entitled to it by virtue of any contract of the deceased person . . . ."

[9] The coexecutors agreed to hold the proceeds in escrow pending resolution of any competing claims. See footnote 6 of this opinion.

[10] General Statutes § 45a-428 (b) provides in relevant part: "[R]eal property of a decedent whose estate is solvent and . . . specifically devised by will . . . shall not be so ordered to be sold or mortgaged without the written consent of the specific devisees . . . ."

[11] We note that neither the certified question; see footnote 2 of this opinion; nor the briefing of the parties in the present case, relate to the Appellate Court's conclusion that the coexecutors' counterclaim was moot. See *Southport Congregational Church–United Church of Christ* v. *Hadley*, supra, 152 Conn. App. 300.

[12] We recognize that the modern trend in contract law is to abandon the distinction between conditions precedent and conditions subsequent. See, e.g., *Gingras* v. *Avery*, 90 Conn. App. 585, 591 n.4, 878 A.2d 404 (2005). Nevertheless, our state's case law has previously recognized a difference between conditions precedent and conditions subsequent. See *Seymour Trust Co.* v. *Sullivan*, 152 Conn. 282, 286, 206 A.2d 420 (1964) (parties "forfeit[ed] their rights . . . by operation of a condition subsequent expressly provided for in the contract"); *Dolak* v. *Sullivan*, 145 Conn. 497, 503, 144 A.2d 312 (1958) ("obligations under [contract] were subject to extinguishment, in whole or in part, upon the happening of a condition subsequent"); *Westmoreland* v. *General Accident Fire & Life Assurance Corp.*, 144 Conn. 265, 272, 129 A.2d 623 (1957) (The contract "does not contemplate that [a condition] is a condition precedent to cancellation. If such adjustment is not a condition precedent, it certainly is not a condition subsequent . . . ."); *Detels* v. *Detels*, 79 Conn. App. 467, 473, 830 A.2d 381 (2003) ("the parties may have created a condition subsequent that would operate to discharge the plaintiff from his obligation").

[13] The exact language of the contract at issue in *Francini* is unclear. See *Francini* v. *Farmington*, supra, 557 F. Supp. 152. The court merely states: "Completion of the contract was conditioned on approval by [a municipal planning and zoning commission] of [the buyer's] application to subdivide the land into four lots." Id.

[14] The clause stated that the contingency would continue indefinitely until the buyer notified the seller of its removal. *Grant* v. *Kahn*, supra, 198 Md. App. 431–32. If the buyer did not do so within forty-five days, the seller could terminate the contract by notice to the buyer, which would void the contract in three days unless the buyer addressed the contingency. Id. The buyer never removed the contingency and the seller never sought to terminate the contract. Id. The issue of ownership during the executory period arose when, several days before closing, a judgment entered against the property. Id., 432.

[15] The clause at issue in *Parson* stated: "Purchaser will obtain a loan upon the security of the real property above described to provide a part of the consideration hereinabove provided for, the reasonable time hereinafter accorded purchaser for performance of the obligation required of him by this contract shall include a reasonable time for processing and consummation of such loan." (Internal quotation marks omitted.) *Parson* v. *Wolfe*, supra, 676 S.W.2d 692.

[16] See also *Faloutico* v. *Maher*, 182 Conn. 448, 449, 438 A.2d 710 (1980) (per curiam); *Lach* v. *Cahill*, supra, 138 Conn. 421; *Barber* v. *Jacobs*, 58 Conn. App. 330, 335, 753 A.2d 430, cert. denied, 254 Conn. 920, 759 A.2d 1023 (2000).

[17] "The agreement was made contingent upon the buyers' obtaining a conventional mortgage of $59,000 for a term of twenty-five years at a rate not to exceed 11 percent. It also contained a clause which stated that the '[s]ale [is] contingent upon [b]uyer obtaining [a] mortgage commitment no later than March 12, 1979.' " *Loda* v. *H. K. Sargeant & Associates, Inc.*, supra, 188 Conn. 71. "Another clause, appearing directly below this clause, provided: 'If [b]uyer is unable to obtain such financing, he may, by written notice to the [s]eller, declare this agreement null and void and any payments

made hereunder shall be returned to [b]uyer. Buyer agrees to apply for such financing immediately, and to pursue such application with diligence.' " Id., 77–78 n.9.

[18] This court described the clause by stating: "The contract was 'subject to and conditional upon the buyers obtaining first mortgage financing on said premises from a bank or other lending institution in an amount of $45,000 for a term of not less than twenty . . . years and at an interest rate which does not exceed [8.5 percent] per annum.' . . . The parties further agreed that if the plaintiffs were unsuccessful in obtaining financing as provided in the contract, and notified the seller within a specific time, all sums paid on the contract would be refunded and the contract terminated without further obligation of either party." *Luttinger* v. *Rosen*, supra, 164 Conn. 46.

[19] This may have been the case in *Loda*, however. The clause in *Loda* stated that the sale would not go through *unless* the buyer secured a mortgage commitment by a particular date. *Loda* v. *H. K. Sargeant & Associates, Inc.*, supra, 188 Conn. 71. Thus, the seller's duty to convey title may have been conditional. Nonetheless, *Loda* does not control the present case because the present clause is distinguishable; the contract in this case *remained* in full force and effect unless the buyer terminated the contract within twenty-one days.

[20] *Francini* and *Rockland-Rockport Lime Co.* are also instructive, but distinguishable from the present case. In those cases, the parties did not intend for the sale to proceed until a condition occurred. See *Francini* v. *Farmington*, supra, 557 F. Supp. 155 (approval of buyer's application to subdivide lot); *Rockland-Rockport Lime Co.* v. *Leary*, supra, 203 N.Y. 480 (lessee's exercise of option to purchase property). Here, the decedent's duty to convey title was not conditioned on Winn's ability to obtain a mortgage.

[21] The church also argues that a provision in the contract placing the risk of loss on the decedent until closing demonstrates that the parties did not intend for title to pass to Winn at signing. The church raised this argument for the first time in its brief to this court. "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 761, 95 A.3d 1031 (2014). Furthermore, "as a general rule, a party may not raise a claim in a certified appeal to this court that it failed to raise in the Appellate Court." *Mueller* v. *Tepler*, 312 Conn. 631, 643, 95 A.3d 1011 (2014). We therefore decline to address the church's contention with respect to the risk of loss provision.

[22] The cases cited by the church in support of this argument did not involve contingencies and refer more generally to the maxim that the contract must be enforceable for equitable conversion to apply. See *Zaring* v. *Lavatta*, 36 Idaho 459, 211 P. 557 (1922) (contract unenforceable against seller when buyer's obligations under contract were "altogether indefinite and uncertain"); *Clark* v. *Potts*, 255 Ill. 183, 189, 99 N.E. 364 (1912) ("[t]he minds of the parties never met . . . [the seller] would have had a complete defense [to the enforceability of the contract], on the ground that the contract had never been accepted by him . . . [u]nless a contract can be specifically enforced as to all parties, equity will not interfere" [internal quotation marks omitted]); *Panushka* v. *Panushka*, 221 Or. 145, 149, 152, 349 P.2d 450 (1960) ("a test as to the existence of a conversion under an executory contract is the mutuality of the agreement, the purchaser agreeing to buy and the seller agreeing to sell, thereby vesting either party to such a contract with the right to specific performance" and "[a]n equitable conversion . . . takes place when a contract for the sale of real property becomes binding upon the parties"); *Tulin* v. *Johnston*, 152 Va. 587, 593, 147 S.E. 206 (1929) (infant could not specifically enforce contract when contract could not be specifically enforced against him).

[23] The contract states: "If SELLER defaults . . . BUYER shall have such remedies as BUYER shall be entitled to at law or in equity, including, but not limited to, specific performance."

[24] Winn assumed various obligations under the contract, such as the duty to "make prompt application for [a mortgage] and to pursue said application with diligence."

[25] Some jurisdictions have held that specific devises are adeemed pursuant to the doctrine of equitable conversion when the testator enters into a contract to sell the property to a third party during his or her lifetime. See, e.g., *In re Dwyer's Estate*, 159 Cal. 664, 675–76, 115 P. 235 (1911); *In re Estate of Krotzsch*, 60 Ill. 2d 342, 348–49, 326 N.E.2d 758 (1975); *Kelley* v.

*Neilson*, 433 Mass. 706, 714–15, 745 N.E.2d 952 (2001); *Newport Water Works* v. *Sisson*, 18 R.I. 411, 411–12, 28 A. 336 (1893).

[26] The seller specifically devised $150,000 to Reverend Paul Whitmore and Laura Whitmore. Reverend Whitmore is the pastor of Southport Congregational Church–United Church of Christ.

[27] Cheekwood argues that Winn waived the mortgage contingency clause before the decedent's death. However, because we hold that the clause did not prevent the application of equitable conversion regardless of whether Winn waived it, we need not address this contention.

———————————————